[No 6,161.—In Bank.]

## THOMAS KNIGHT v. JAMES ROCHE ET AL.

NEW TRIAL—FINDINGS—CASES COMMENTED ON. — Conceded for the purposes
of this case, but *held* unnecessary to decide, that where all the issues of
fact raised by the pleadings are found upon by the Court, an erroneous
judgment drawn from those facts cannot be corrected by means of a
motion for a new trial.

ID.—ID.—DECISION AGAINST LAW—DEFINITION.—A judgment, based upon
findings which do not determine all the issues raised by the pleadings, is a
*decision against law*, for which a new trial may be had.

ID.—ID.—ULTIMATE AND PROBATIVE FACTS.—In an action of ejectment,
where the complaint alleges seizin in the plaintiff, a finding of prior posses-
sion in the defendant does not meet the issue as to title.

DEED OF TIDE LAND COMMISSIONERS—SALT-MARSH, AND TIDE LANDS.—The
Board of Tide Land Commissioners, under the Act of April 1st, 1870, (Stat.
1869-70, p. 541) had no authority to dispose of lands, at that time, lying
above high-water mark. .

ESTOPPEL—FORMER ADJUDICATION.—A judgment in a former action be-
tween the plaintiff and defendants, to quiet title to a portion of the land in
controversy, *held*, upon the facts stated in the opinion, not to be a bar.

APPEAL from an order denying the plaintiff a new trial, in the Twelfth District Court, City and County of San Francisco. DAINGERFIELD, J.

*B. S. Brooks,* for Appellant.

It is certain that no title can be derived to either party from the State Tide Land Commissioners. As to the land below ordinary high-water mark, on March 26th, 1851, the State, by an act of the Legislature, granted it all to the city for ninety-nine years. As to the land above high-water mark, this is within the confirmed limits of the Pueblo of San Francisco, and by the settled doctrine of the Supreme Court of the United States, the land confirmed is bounded by the ordinary high-water mark, and such are the express terms of the decree of confirmation.

The Court erred in admitting in evidence the deed of the Tide Land Commissioners to defendants, and also in admitting the judgment roll in the forcible entry case. (*Davis* v. *Perley,* 30 Cal. 630; *Willson* v. *Cleaveland,* id. 192.) There is no finding at all in regard to the plaintiff's title.

*D. W. Douthitt,* for Respondent.

The decree rendered in *Knight* v. *Haight* (see 51 Cal. 169) is conclusive. The defendant acquired title by virtue of the deed from the State Tide Land Commissioners. (*Rondell* v. *Fay,* 32 Cal. 354.) They and their grantors have also had possession for upwards of twenty years before the commencement of this suit.

PETITION FOR HEARING IN BANK (by the same counsel.) There is no appeal from the judgment. Upon an appeal from an order denying a new trial, the sufficiency of the findings, or whether or not they support the judgment, cannot be inquired into. (*Jenkins* v. *Frink,* 30 Cal. 587–596; *Moore* v. *Murdock,* 26 id. 524; *Hutton* v. *Reed,* 25 Cal. 478.)

ROSS, J.:

When this cause was before Department No. 1, it was determined upon the theory that there was an appeal from the

judgment as well as from the order denying the motion for a new trial. It was stated in the brief of counsel for appellant that the appeal was taken from the judgment as well as the order, and the cause was argued as if such were the case. The Department was thus led into the error of supposing that there was an appeal from the judgment. On the petition of the respondent for the hearing of the cause by the Court in bank this mistake of fact was first made known to us. The petition was granted, and the cause has been again argued.

The facts of the case are stated at length in the opinion filed in Department No. 1, and, therefore, it is not necessary to repeat them here. On behalf of the respondent it is urged that, inasmuch as there is no appeal from the judgment, the sufficiency of the findings cannot be considered.

It may be conceded, for the purposes of this case, that where all the issues of fact raised by the pleadings are found upon by the Court, and the findings are not complained of, an erroneous judgment drawn from those facts cannot be corrected by means of a motion for a new trial. In such case, it might be contended, there would be no question of fact to be re-examined, and no necessity for a new trial. It was so held in *Jenkins* v. *Frink*, 30 Cal. 596; and the cases of *Martin* v. *Matfield*, 49 Cal. 42, and *Thompson* v. *Hancock*, 51 Cal. 110, seem to sustain that view.

But it is not necessary for us in this case to express any opinion upon that question, for the case last suggested differs altogether from one where the Court does *not* find upon all the material issues of fact. A judgment based upon findings which do not determine all such issues is, in our opinion, "a decision against law," for which a new trial may be had. In such case, a re-examination of the facts of the case becomes necessary in order that the issues of fact may be determined.

Section 656 of the Code of Civil Procedure declares a new trial to be "a re-examination of an issue of fact in the same court, after a trial and decision by a jury, court, or referee"; and the next section (657) provides that such new trial may be granted upon certain grounds; among others—

"Insufficiency of the evidence to justify the verdict or other decision, or that it is against law."

Whatever else may be meant by the expression, "decision against law," we think there is no doubt that it includes a case where the decision is based upon findings which do not determine all of the material issues of fact raised by the pleadings.

It becomes necessary, therefore, to inquire whether the findings in the case at bar determine all such issues.

The action is ejectment, and the complaint charges that on the 1st of April, 1872, the plaintiff "was the owner and seized in fee, and possessed of, and entitled to the possession, and ever since has been, and still is, entitled to the possession," of the land sued for; and then alleges an ouster of plaintiff by defendants on said 1st day of April, 1872, etc. The defendants, by their answer, denied all of the allegations of the complaint, and also set up other matters not now important to be noticed.

We have given to the views urged by counsel for the respondent careful consideration, and remain unable to see that there is any finding, one way or the other, as to the plaintiff's alleged ownership or possession of the premises in question, or as to the alleged ouster, or that the probative facts found necessarily determined those issues. It is true, as said by counsel, that "if defendants were the owners, it necessarily follows that plaintiff was not the owner." But the Court does not find as a fact that defendants were the owners, nor does it find such facts as establish ownership in them, or such facts as show them to have been entitled to the possession of the property at the time of the commencement of the action, or at any time since. There is, of course, no doubt that possession is *prima facie* evidence of title. On the question of possession, the finding is:

"That on the 28th day of August, 1868, and long prior thereto, H. F. Williams and his predecessors were and had been in the actual and peaceable possession of said block of land, claiming to own the same; and that on the said 28th day of August, 1868, the said Williams, by deed duly executed, and for a large consideration, sold and conveyed said block of land to defendants, James Roche and Henry Conroy, and that they thereupon entered into the actual possession thereof, and that they and their grantors have been in the actual possession thereof, except when interrupted by intruders, since that time, and are now in such possession; that about the time above

named, R. C. Page, Geo. W. Dent, and Frederick T. Dent conveyed to said Conroy and Roche, and that they claimed some interest in said land."

*Non constat* but that the defendants' possession was " interrupted by intruders " the next day after the making the deed to them by Williams in 1868, and that they were out of possession from that time until the commencement of this action. Nor does it appear from the findings that Williams, or any of his predecessors, or Page, or either of the Dents, ever had any title to or interest in the property. The plaintiff alleged in his complaint that on the 1st day of April, 1872, *he* was " the owner and seized in fee and possessed of and entitled to the possession, and ever since has been and still is entitled to the possession," of the land in question, and that on the said 1st day of April, 1872, the defendants ousted him therefrom, and have ever since withheld the premises from him. These averments being denied by the defendants, it was the duty of the trial Court to find upon the issues thus made. It is perfectly obvious that everything stated by the Court in the finding above quoted may be true, and yet the plaintiff have been the owner in fee, and entitled to the possession of the premises on the 1st of April, 1872, and so continued up to and including the date of the making of the findings and the entry of the judgment. But the Court below also found as follows :

" *First.*—The land in controversy is salt-marsh and tide land. That it was known and numbered as Potrero Block No. 169 upon the official map of the city, as it existed before 1870, and for a long time prior to 1866 and since was surrounded by streets, as delineated upon said map, and the lines thereof were and have been since marked by fencing around said block and adjoining blocks, and the streets are and have been open streets."

    \*     \*     \*     \*     \*     \*     \*

" *Third.*—On September 30th, 1871, the Board of Tide Land Commissioners, as constituted according to the provisions of an act supplementary and amendatory of an act entitled 'An Act to convey and dispose of certain salt-marsh and tide lands belonging to the State of California, approved March 30th, 1863,' approved April 1st, 1870, for a valuable consideration, sold and conveyed, by deed duly executed, said block of land to the

defendants, Conroy and Roche, which deed was duly recorded in the Recorder's office of the City and County of San Francisco, State of California, in Liber 629 of Deeds, page 308, on October 2nd, 1871. That subsequent thereto, and before the commencement of this suit, the said defendants, Conroy and Roche, conveyed to D. W. Douthitt the undivided one-third interest in said land, and said Henry Conroy sold and conveyed his interest in said land to the defendant, Hugh S. Slicer, on the 8th day of November, 1871."     *     *,     *     *     *     *

"*Sixth.*—That said land, except a small portion thereof, (as described in the decree in the case of *Knight* v. *Haight et al.*, as mentioned in the fourth finding) is above the ordinary high-water mark, and that said land (except the portion described in said decree) is not included within the boundaries of the red line as indicated upon the red-line map, as provided for by the Act of March 26th, 1851."

In view of these findings, it was held by Department No. 1 that the deed from the Tide Land Commissioners conveyed no title to that portion of the land, at least, situated above the ordinary high-water mark. In thus holding it is contended there was error. It is said that the application of two principles, namely, that the presumptions are in favor of the plaintiff's deed from the Commissioners, and that the findings are to be harmonized, if possible, establish the error. Admitting the correctness of the principles, we do not think the conclusion contended for follows. In the first finding, the Court states that the land " is salt-marsh and tide land." In the sixth finding it is said that, with the exception of a small portion, the land is above the ordinary high-water mark."

Respondents say that the finding, that the land " is salt-marsh and tide land," refers to its legal character on the 7th of July, 1846, and that the finding that, with the exception referred to, it " is above the ordinary high-water mark," refers to its actual condition at the time of the trial of this case.

We cannot place such different constructions upon the same word—" is." Moreover, in the same finding in which the land is spoken of as salt-marsh and tide land, the Court finds " that the land     *     *     * for a long time prior to 1866, and since, was surrounded by streets, as delineated upon said (official) map

(of said city) and the lines thereof were and have been since marked by fencing around said block and adjoining blocks, and the streets are and have been open streets."

The fact that the land in question, for a long time prior to 1866, was, and since has been, surrounded by open streets, the lines of which are and have been marked by fences, accords with the further fact that it is above the ordinary high-water mark; and we entertain no doubt that so much of it at least as was situated above the ordinary high-water mark at the time of the passage of the Act of April 1st, 1870, (Stat. 1869–70, p. 541) and at the time of the making of the deed by the Commissioners organized under that act, was not subject to disposal by the said Commissioners.

The act only authorized the Commissioners, provided for by its fourth section, to dispose of certain specially described portions of the salt-marsh and tide lands belonging to the State, as clearly appears from its first section, which is as follows: " Section 1. The Board of Tide Land Commissioners shall have the charge and disposition of all the salt-marsh and the tide lands *lying under water* belonging to the State of California, and situate in the City and County of San Francisco, and all the salt-marsh and tide lands, to nine feet of water at extreme low tide, within five statute miles of the exterior boundaries of said city and county, as fixed and established in section one (1) of an amendatory and supplementary act, approved April 18th, 1857; *provided,* that nothing herein contained shall give said Commissioners any control over the lands heretofore granted to the City of Oakland."

That the Commissioners provided for by this act were only authorized to dispose of such lands as were embraced within the description given in the act, does not, in our opinion, admit of debate; and that at least a portion of the land in question, according to the findings already adverted to, do not come within this description, we consider equally clear.

We find nothing in any of the authorities cited by respondents contravening this view. We adhere to what is said in the opinion of Department No. 1 regarding the alleged bar to the present action, by reason of the former action of *Knight* v. *Roche et als.*

It may be, however, that the Sheriff's return to the writ of possession issued in the forcible entry and detainer case of Conroy and Roche against Duane and others, and also, as authority for the writ, the judgment roll in the action, were admissible for the purpose of showing the fact of possession of the premises by Conroy and Roche. But, if admissible at all, it was only for that purpose. The facts detailed in the findings concerning that action have no place there.

We think the order should be reversed, and the cause remanded for a new trial. So ordered.

MORRISON, C. J., MYRICK, J., McKINSTRY, J., and SHARPSTEIN, J., concurred.

THORNTON, J., concurred in the judgment.

The following is the opinion of the Court in Department One, referred to in the foregoing opinion:

ROSS, J.:

This is an action of ejectment brought by the plaintiff against James Roche, Henry Conroy, H. S. Slicer, D. W. Douthitt, and two fictitious defendants, to recover a piece of salt-marsh land, situated within the confirmed limits of the City of San Francisco. The complaint, which is not verified, is in the usual form in such actions, and alleges that on the 1st of April, 1872, plaintiff "was the owner, and seized in fee, and possessed and entitled to the possession," of the demanded premises, and that defendants on that day ousted plaintiff therefrom, etc. The answer contained, first, a general denial, putting in issue all of the allegations of the complaint. In addition, it set up that on the 29th of September, 1871, plaintiff commenced an action in the Fourth District Court against James Roche, Henry Conroy, and D. W. Douthitt, to quiet his alleged title to, and to remove a cloud from, a *portion* of the land in controversy in the present action; that issue was joined in that action, a trial had upon the merits, resulting in the entry on the 1st of October, 1873, of a judgment decreeing that plaintiff "was only entitled to the reversionary interest of the State of California, after the expiration of ninety-nine years from the 26th of March, 1851, to the *following por-*

*tion of the land described in said action and in this action*" (describing it); and further decreeing "that, as to the remainder of the lands described in the complaint, and as to the other defendants, that the said action be *dismisssd.*" The answer further set up that, pending the action in the Fourth District Court, Henry Conroy conveyed all his interest in the land then in question to H. S. Slicer, and "that there was no formal substitution of Slicer as a defendant therein, but that the same was defended by Conroy in the interest of Slicer."

The answer further averred, that for more than twenty years before the commencement of this action, defendants had been in the adverse possession of the premises.

A supplemental answer was filed, in which it was alleged that the plaintiff appealed to this Court from the decree rendered in the Fourth District Court case, and that decree was, on the 18th of October, 1875, affirmed by the Supreme Court.

The foregoing is the substance of the pleadings in the case, upon which it was tried.

At the trial a good deal of evidence was introduced upon which the Court made findings, the material portions of which are as follows:

*First.*—That the land in controversy is salt-marsh and tide land, and is known and numbered as Potrero Block, No. 169, upon the official survey of the city, as it existed prior to 1866.

*Second.*—"That on the 28th day of August, 1868, and long prior thereto, H. F. Williams and his predecessors were and had been in the actual and peaceable possession of said block of land, claiming to own the same; and that on the said 28th day of August, 1868, the said Williams, by deed duly executed, and for a large consideration, sold and conveyed said block of land to defendants, James Roche and Henry Conroy, and that they thereupon entered into the actual possession thereof; and that they and their grantors have been in the actual possession thereof, except when interrupted by intruders, since that time, and are now in such possession; that about the time above named, R. C. Page, George W. Dent, and Frederick T. Dent conveyed to said Conroy and Roche, and that they claimed some interest in said land."

*Third.*—That on September 30th, 1871, the Board of Tide Land Commissioners, as constituted under the Act of April 1st,

1870, sold and conveyed the said block of land to Conroy and Roche, and that subsequently, and before the commencement of this action, Conroy and Roche conveyed to Douthitt an undivided third interest in the land, and that on the 8th of November, 1871, Conroy conveyed his interest to Slicer.

*Fourth.*—The fourth finding states the facts respecting the Fourth District Court action of plaintiff against Roche and others mentioned in the answer and supplemental answer.

The fifth and sixth findings are as follows:

*Fifth.*—That in August, 1868, while the defendants, Conroy, Roche, and Douthitt, were in the actual and peaceable possession of said land under their deed from Williams and others, one C. P. Duane and others unlawfully and forcibly took possession of said premises from said Conroy, Roche, and Douthitt; and thereafter said Knight, the plaintiff herein, forcibly entered upon a portion of the premises, being the same described in the fourth finding, and ejected the said Duane and others from said portion of the premises; that thereupon said Roche, Conroy, and Douthitt, defendants, erected on the block a building, and have been in possession thereof ever since. That in February, 1869, the defendants, Henry Conroy and James Roche, commenced an action of forcible entry and detainer against said C. P. Duane and others, in the County Court of the City and County of San Francisco, for the purpose of recovering the possession of the said block of land; and such proceedings were had that a trial was had before the Court upon the merits in March, 1869; and that on the 25th day of March, 1869, the said Court rendered judgment for plaintiff and against said defendants. That thereafter said defendants duly appealed said cause to the Supreme Court of the State, and that long before the commencement of this action, said judgment was duly affirmed by said Supreme Court, and that long before the commencement of this suit, to wit, in the year 1873, a writ of possession was duly issued out of said Court, in favor of said Conroy and Roche, and upon said judgment, and that they were by the Sheriff of said city and county duly placed in the actual possession of said land as provided by law, and that they and their grantees have been in such possession of all the land in dispute ever since.

*Sixth.*—That said land, except a small portion thereof (as de-

scribed in the decree in the case of *Knight* v. *Haight et al.*, as mentioned in the fourth finding) is above the ordinary high-water mark, and that said land (except the portion described in said decree) is not included within the boundaries of the red-line, as indicated upon the red-line map, as provided for by the Act of March 26th, 1851."

Upon these findings judgment was rendered in favor of the defendants.

1. It has been repeatedly held here that when findings are made, there must be a finding upon all of the material issues in the cause, and, further, that the findings must support the judgment. (*Baggs* v. *Smith*, 53 Cal. 88; *Shaw* v. *Wandesforde*, id. 300; *Taylor* v. *Reynolds*, id. 687; *O'Connor* v. *Frasher*, id. 435.) Applying these rules to the findings in the present case, their insufficiency becomes manifest. There is no finding, one way or the other, as to the plaintiff's alleged ownership or possession of the premises in question, nor as to the alleged ouster. Nor do the probative facts found, necessarily determine those issues.

2. Whatever the evidence may show, the *findings* do not establish title in defendants. It does not appear from them that Williams or any of his predecessors, or Page, or either of the Dents, ever had any title to or interest in the property.

The Court having found as a fact that the land in controversy, with the exception of a small portion, is *above the ordinary high-water mark*, it follows necessarily that the conveyance from the State Tide Land Commissioners conveyed no title to that portion, at least, that is above the ordinary high-water mark. (Act of April 1st, 1870, Stat. 1869–70, p. 541; *Tripp* v. *Spring*, 2 Pacific C. Law J: 29.)

3. Assuming that the judgment and the action of *Knight* v. *Roche et als. may* be a bar to the present action—a point we do not decide—it is clear it cannot be, as it is made to appear in the pleadings and findings. It there appears that the plaintiff, in the Fourth District Court action, only sued to quiet title to a *portion* of the land involved in the present suit; that, by the judgment, it was decreed that he was " entitled to the reversionary interest of the State of California, after the expiration of ninety-nine years from the 26th of March, 1851," to a *portion*

of the premises involved in *that* action, and that " as to the remainder of the lands described in the complaint, and as to the other defendants, that the said action be *dismissed*."

If this judgment can be held to be a bar to the present action as to any of the land described in the complaint, it is perfectly plain that it cannot be such a bar to all of it; for it does not appear that the same title was in issue, and it *does* appear that a portion of the land here in question was not embraced in the complaint or decree in the former action.

4. It is difficult to understand why the facts relating to the forcible entry and detainer action of Conroy and Roche against Duane and others were incorporated in the findings; or upon what principle the judgment roll in that action and the Sheriff's return to the writ of possession thereupon issued, were admitted in evidence, since it nowhere appears that the plaintiff was a party to the action or had any connection with it. In our opinion, both were inadmissible, and the Court erred in receiving them. The presumption of error that is indulged from their erroneous admission is strengthened by the fact that the Court deemed the matter of sufficient importance to incorporate the facts respecting it in the findings.

Judgment and order reversed, and cause remanded for a new trial.

McKINSTRY, J., and McKEE, J., concurred.