## BRYAN v. TORMEY.*

### No. 11,873; May 20, 1889.

#### 21 Pac. 725.

**Quieting Title.—A Complaint to Quiet Title Alleged That Plaintiff** was the owner and in possession of the property. The findings were that plaintiff was the owner, but that defendant was in possession, and judgment was rendered that plaintiff's title be quieted, and that defendant be removed from possession. Under Code of Civil Procedure of California, section 380, the action may be maintained by one not in possession. Held, that though the judgment was in direct contradiction to the complaint, it would be modified on appeal so as to omit the part relating to possession, and would be thus affirmed, without costs to either party.

**Quieting Title.—M. Took Possession of Land in 1861, Claimed It** as his own, cultivated it regularly, and paid all the taxes. After eleven years he sold to his brother, who took possession, improved the property, and paid the taxes. After five years he conveyed to plaintiff's testator, who took possession, exercised acts of ownership, and held possession till 1881. M. knew of his brother's possession, and knew that he sold to plaintiff's testator, and that the latter was in possession and improving the property, and made no claim to the land, or any protest, till about 1880, when he discovered there was no deed on record of the original conveyance by himself. He then gave a deed of the land to defendant. Held, that there was a presumption of title in M.'s brother, which was not rebutted by the fact that he originally entered under an oral contract of purchase, or by the fact that there was no deed on record conveying to him.

*For subsequent opinion in bank, see 84 Cal. 126, 24 Pac. 319.

**Quieting Title.—In View of Such Presumption, It is Immaterial** that declarations of M. that he had conveyed to his brother were erroneously admitted in evidence. Defendant knew that M. was not in possession when he conveyed to him, and there was no evdence, except the presumption arising from the deed, that defendant gave any consideration for the land. He knew that M.'s brother had conveyed the land as if it was his own. He did not make inquiries of the occupants of the land, and, although he heard that there was a deed from M. to his brother, there was no evidence that he made any inquiries of M. about it, but he made inquiries of the widow of M.'s brother, and searched the records. Held, that defendant was not a bona fide purchaser.

**Quieting Title.—The Pleadings Having Alleged That Plaintiff** was the owner in fee of the property, a finding that he was the owner in fee is sufficient to show that fact, though there are probative facts stated tending to show the contrary, but which are not necessarily inconsistent with the fact of plaintiff's ownership; especially where the findings further state that defendant never had any title or interest in or to said land.

APPEAL from Superior Court, Alameda County; N. Hamilton, Judge.

Stanly, Stoney & Hayes for appellant; W. H. H. Hart and Aylett & Cotton for respondent.

HAYNE, C.—Action to quiet title to certain land in the town of Berkeley. Both parties claim through one John Mathews, in whom the title stood of record until August 13, 1880, when he conveyed to the defendant, who was his son in law. The plaintiff's position is that, prior to the conveyance to the defendant, John Mathews had conveyed to his brother, Peter Mathews, through whom she claims. The trial court gave judgment for the plaintiff, and the defendant appeals. Several points are made by the learned counsel for the appellant, but we deem it sufficient to notice the following:

1. It is contended that the complaint does not support the judgment. The complaint alleges that the plaintiff was the owner and in possession of the property, while the findings are that the plaintiff was the owner, but that the defendant was in possession; and the judgment is that the plaintiff's title be quieted, and that the defendant be removed from possession. The findings and judgment, therefore, so far as the

possession is concerned, are in direct contradiction of the complaint. It is obvious that the plaintiff cannot have a judgment in direct contradiction of her complaint: Von Drachenfels v. Doolittle, 77 Cal. 295, 19 Pac. 518. But the right to have the title quieted does not, under our statute, depend upon the plaintiff's possession. The action may be maintained by one out of possession: Code Civ. Proc., sec. 380; Hyde v. Redding, 74 Cal. 493, 16 Pac. 380. And its character is not changed by the circumstance that the defendant is or is not in possession: Polack v. Gurnee, 66 Cal. 266, 5 Pac. 229, 610. The judgment may therefore be modified by leaving out the part relating to the possession; and, inasmuch as this was "an apparent error which the counsel for appellant might have corrected below by specific motion for that purpose, we think it not equitable to tax the costs to the respondent": Cassin v. Marshall, 18 Cal. 692; Noonan v. Hood, 49 Cal. 293.

2. It is argued that the findings do not show that the legal title was in plaintiff's testator. It was alleged, however, that the plaintiff is "the owner in fee" of the property, and the finding is in the same language. The allegation that the plaintiff is the owner of the property is of an ultimate fact: Payne v. Treadwell, 16 Cal. 242; Garwood v. Hastings, 38 Cal. 217; Ferrer v. Insurance Co., 47 Cal. 431; Miller v. Brigham, 50 Cal. 615; Rough v. Simmons, 65 Cal. 227, 3 Pac. 804; Thompson v. Spray, 72 Cal. 534, 14 Pac. 182; Heeser v. Miller, 77 Cal. 192, 19 Pac. 375; Souter v. Maguire, 78 Cal. 543, 21 Pac. 183. The findings are sufficient if they follow the language of the pleadings (Hihn v. Peck, 30 Cal. 286), or if they make a definite reference to the pleadings, as has been held in numerous cases. Hence the finding as to the ownership in fee is sufficient, and shows that the legal title was in the plaintiff: Murphy v. Bennett, 68 Cal. 528, 9 Pac. 738; McLeran v. Benton, 73 Cal. 329, 2 Am. St. Rep. 814, 14 Pac. 879. And its force is not destroyed by the finding of certain probative facts tending to show that the legal title is in the defendant. It may be conceded that where the probative facts found are necessarily inconsistent with the finding of the ultimate fact, the latter may be treated as a mere conclusion. But where the ultimate fact inferred does not necessarily result from the probative facts found, these latter are not sufficient as a finding, taken by themselves (Emmal v. Webb, 36 Cal. 204; Biddel

v. Brizzolara, 56 Cal. 381, 382; Knight v. Roche, 56 Cal. 18;
Packard v. Johnson, 57 Cal. 183, 184; Younger v. Pagles, 60
Cal. 520), and are controlled by a finding of the ultimate
fact: Barrante v. Garratt, 50 Cal. 114; Edwards v. Bank, 59
Cal. 148. This must necessarily be so, for the function of
findings is to establish the facts with certainty, and not to
deal in probabilities. In the case before us the finding of the
defendant's chain of title is not necessarily inconsistent with
the plaintiff's ownership; for it may be that John Mathews
conveyed to his brother Peter before he "made a deed" to
the defendant (Smith v. Acker, 52 Cal. 219), which, as stated
below, is what must be taken to be true upon the evidence.
This conclusion is strengthened by the finding that the defend-
ant "never had any estate, right, title, or interest in or to
said land, or any part thereof."

3. It is urged that there is no evidence that John Mathews
ever conveyed the property to his brother Peter, except cer-
tain declarations of John to the general effect that he had
done so; and that the admission of such declarations against
defendant's objections was erroneous. There was no direct
evidence of the conveyance in question, and we think it pos-
sible that the admission of said declarations was error: See
Thompson v. Lynch, 29 Cal. 191; Tompkins v. Crane, 50 Cal.
480. But, assuming this to be so, we think that the error
was immaterial, because, upon the undisputed facts of the
case, it must be presumed that such a conveyance was made.
A presumption may supply the place of direct evidence; and,
if not controverted, a court or jury is bound to find in accord-
ance therewith: Code Civ. Proc., sec. 1961; Leviston v. Ryan,
75 Cal. 294, 17 Pac. 239; Speegle v. Leese, 51 Cal. 415. The
question, then, is whether upon the facts shown by the record
a presumption arises of a conveyance from John to Peter
Mathews; and we think that it does arise from the long con-
tinued possession of the plaintiff's predecessors in interest,
and their open and notorious acts of ownership over the prop-
erty. "Possession," says Angell in his work on Limitation,
"by the law of England and of this country, or quasi posses-
sion, as the case may be, is prima facie evidence of property
and of a seisin in fee. The longer the continuance of the pos-
session, and the absence of the disturbance of it, the greater
is the length to which courts of justice will go in supporting

the conclusion that there was a legal origin for it; and, in order to render the title of the possessor complete, they will presume collateral facts, as livery of seisin, execution of deeds, etc., agreeably to the maxim, Ex diuturnitate temporis, omnia praesumuntur solemnitur esse acta": 5th ed., sec. 4; and see Code Civ. Proc., sec. 1963, subd. 12.

The doctrine as to presumption of grants is usually applied in cases of easements. But it is not confined to such cases. In the language of Story, J., delivering the opinion in Ricard v. Williams, 7 Wheat. 109, 5 L. Ed. 410: "A grant of land may as well be presumed as a grant of a fishery, or of common, or of a way. Presumptions of this nature are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They are founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title to, or an admission of an existing title in, the party in possession." And the doctrine was applied as to the land itself in a recent and well-considered case in the supreme court of the United States, in which it was distinctly held that the presumption was not a mere inference of fact—in other words, that it was not necessary for the court or jury to believe that a conveyance was in fact executed—the court, per Field, J., saying: "It is sufficient if the evidence leads to the conclusion that the conveyance might have been executed, and that its existence would be a solution of the difficulties arising from its nonexecution" (Fletcher v. Fuller, 120 U. S. 547, 30 L. Ed. 762, 7 Sup. Ct. Rep. 667), and the authorities fully sustain this proposition.

What period, then, is sufficient to raise the presumption? From the nature of the case, there ought to be no fixed and absolute period: See 120 U. S. 550, 30 L. Ed. 764, 7 Sup. Ct. Rep. 675. Each case is to be governed largely by its own circumstances. But there are certain analogies which may aid in arriving at a conclusion. In the case of easements, the period usually adopted in the older states is twenty years, which was in analogy to the statute of limitations. In this regard Bronson, J., delivering the opinion of the court of errors, said: "The modern doctrine of presuming a right by grant or otherwise to easements and incorporeal hereditaments,

after twenty years of uninterrupted adverse enjoyment, exerts a much wider influence in quieting possession than the old doctrine of title by prescription, which depended on immemorial usage. The period of twenty years has been adopted by the courts in analogy to the statute limiting an entry into lands; but, as the statute does not apply to incorporeal rights, the adverse user is not regarded as a legal bar, but only as a ground for presuming a right either by grant or in some other form'': Parker v. Foote, 19 Wend. *312; and see Edson v. Munsell, 10 Allen, 568.

In California the general statute of limitations for actions concerning real property is five years. We are not at present prepared to say that the presumption of a grant would usually be raised after so short a period in cases where the statute did not apply. It is not necessary to express an opinion upon that point, and we express none. But the fact that the period of the statute of limitations has been shortened is not ground for lengthening the period usually accepted in other states as sufficient to raise the presumption of a grant; nor is the fact that the country is comparatively new, and titles correspondingly unstable, a reason for dispensing with safeguards preserved in older communities. We think, therefore, that uninterrupted possession of land for twenty years or thereabouts, under proper conditions, is sufficient to raise a presumption of a grant, where that is required to make out the occupant's title.

The undisputed facts bring the case within this principle. Peter Mathews took possession of the property in 1861, and he and his successors in interest continued in the open and notorious possession, exercising acts of ownership and control, until the ouster by the defendant in 1881, a period of about twenty years. During the time of his possession Peter Mathews claimed the property as his own. He regularly and annually cultivated it, raising the usual crops for his own use, and benefit, and paid all the taxes: See, in this regard, 120 U. S. 553–555, 30 L. Ed. 765, 7 Sup. Ct. Rep. 677, 678. After eleven years he sold and conveyed to others, who in turn took and kept possession, improved the property by laying it out in lots, opening streets, planting trees, etc., and paid all the taxes. After five years they conveyed the property to the plaintiff's testator, who continued in possession, exercising

acts of ownership and control, until he was ousted by the defendant, in 1881. During all this time John Mathews knew of the condition of affairs. He knew of Peter's possession. He knew that Peter had sold and conveyed the land to others. And he knew that the grantees were in possession, and improving the property. But he made no claim to it. He saw what was going on without one word of protest, or any sign of dissent, until about the time that he ascertained that there was no deed of record. These circumstances seem to us to be sufficient to raise the presumption of title in Peter; and in addition it is to be remembered that at the time of the trial the mouths of both brothers were closed by death.

It is quite true that the presumption is rebuttable. But we see nothing in the record which rebuts it. The fact that Peter originally entered under a verbal agreement of purchase from John does not make against it: See 120 U. S. 545, 546, 30 L. Ed. 762, 7 Sup. Ct. Rep. 673. In view of the other facts, it increases the probability that a deed was subsequently made. Nor does the fact that there was no record of such a deed overcome the presumption. Aside from other reasons, it was in evidence that at the time in question "it was a very common thing to find some deed, in a deraignment of title, not recorded. People were very careless, and they had been prior to that, about recording their deeds." Nor do we see anything in the circumstances adverted to by the appellant's counsel which overcomes the presumption.

4. The defendant was not a bona fide purchaser for value. Counsel do not lay stress upon this aspect of the case; and we deem it sufficient to say in the first place that the defense is not set up in the answer: Eversdon v. Mayhew, 65 Cal. 167, 3 Pac. 641. The answer denies notice, but it does not assert, either affirmatively or negatively, that the defendant was a purchaser for value. Nor is there any evidence (other than the presumption of consideration from the writing) that he paid anything for the deed. In the next place, he admits that he knew that his grantor was not in possession, and that he knew that Peter had conveyed the property as if it was his own. These circumstances were sufficient to put him on inquiry. Yet he says in his evidence: "I did not go to see the people who were occupying the ground before the deed was made to me by John Mathews, nor did I ask them any

questions''; and further on he says: "I didn't go and ask Mrs. Mathews before I took my deed, because I was not in that locality." And, what is more remarkable, he does not say that he inquired about the existence of the deed from the only person then living who must have known about the fact, viz., his own father in law, John Mathews himself. Even after the execution of the deed, and when, according to his own account, "it was dinned into my ears that there was a deed—that John Mathews had made a deed to Peter Mathews''—although he went to Peter's widow about it, and had the records carefully searched, he does not say that he asked the only man who could give him the information he wanted. The other points made do not require special notice. We therefore advise that the judgment be modified by striking out the part relating to the recovery of possession by the plaintiff, and that, as modified, it and the order denying a new trial stand affirmed, without costs of appeal to either party.

We concur: Belcher, C. C.; Foote, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is modified by striking out the part relating to the recovery of the possession by the plaintiff, and that as modified it and the order denying a new trial stand affirmed, without costs of appeal to either party.