[Civ. No. 1161.   Third Appellate District.—November 15, 1913.]

# KARL EMIRZIAN, Respondent, v. SOSEI ASATO, Appellant.

SPECIFIC PERFORMANCE—CONTRACT TO GROW AND SELL ORANGE TREES.—Where one breaks his contract to grow and sell nursery orange trees of a kind which can be bought in the market at the place where the agreement is made, the buyer cannot maintain an action for specific performance against the seller and have him enjoined from disposing of the trees to others; the remedy is an action at law for damages.

ID.—BREACH OF AGREEMENT TO SELL CHATTELS—REMEDIES.—There is a presumption that the breach of an agreement to transfer personal property can be relieved by pecuniary compensation; and where the breach of such a contract can be thus compensated, an injunction will not be granted to prevent the breach.

ID.—PERSONAL SERVICE—SPECIFIC PERFORMANCE OF CONTRACT RESPECTING.—Performance of an obligation to render personal service cannot be specifically enforced.

ID.—CONTRACT RELATING TO CHATTELS — SPECIFIC PERFORMANCE.—In general a court of equitable jurisdiction will not decree the specific performance of a contract relating to the transfer of personal property which has a market value and no special or unique value, and which is bought and sold in the open market. The remedy at law is sufficient, since, with the unpaid purchase money and the moneys recovered by action, the buyer can purchase in the open market property of the same character as that contracted for, if the seller is in fault.

ID.—OFFER OF PERFORMANCE BY DEFENDANT—REFUSAL OF ACCEPTANCE—FINDING.—Where in an action for the specific performance of a contract to grow and sell nursery orange trees the seller alleges offer of performance and refusal of acceptance, he is entitled to a finding upon such issue.

ID.—FINDING ON MATERIAL ISSUE—FAILURE TO MAKE.—A failure to find on a material issue demands a reversal of the case, and a judgment based upon findings which do not determine all the material issues is a decision against law.

APPEAL from a judgment of the Superior Court of Fresno County.   Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

Geo. Cosgrave, for Appellant.

W. D. Crichton, and C. K. Bonestell, for Respondent.

CHIPMAN, P. J.—This is an action to enforce the specific performance of a written contract to deliver certain (nursery) orange trees; to enjoin defendant, during the pendency of the action, from disposing of said trees otherwise than as provided in said contract; for damages resulting from defendant's failure to properly care for said trees; and for such further relief as may be proper in the premises.

A jury, called to try the issues of fact, returned a general verdict for the defendant. On motion of plaintiff the court set aside the verdict and gave its decision in favor of plaintiff.

The contract of which specific performance was sought was entered into June 8, 1909, by which first party (plaintiff) agreed to buy and second party (defendant) agreed to sell "4,000 Washington orange trees, more or less, for the sum of twenty-five cents per tree as follows, to wit: Party of the second part will immediately at his place of business in the town of Centerville, Fresno County, California, proceed to put, cultivate and care for said orange trees for a period of one year from date, whereon, and of which time, party of the first part will select from the body of the orange trees, so grown by the party of the second part 4,000 orange trees, all of which must be good, strong, healthy trees and over two feet high, after which time party of the first part shall pay the party of the second part, reasonable value for any services, necessary to care for said trees for one year more, whereby on and in the month of June, 1911, said party of the second part agrees carefully and in a workmanlike manner ball all of the said trees and place the same in proper condition to be delivered to party of the first part. Party of the first part to arrange the sacks sufficient for said balling and party of the first part agrees to pay party of second part sum of twenty-five dollars cash on execution and delivery of this agreement, the sum of one hundred dollars, on or before ninety days from date, the remainder of the purchase price to be paid when the said trees are accepted and delivered to the party of the first part."

In plaintiff's second amended and supplemental complaint it is further shown: That defendant planted four thousand orange trees pursuant to said contract and proceeded to care for the same; that, in June, 1910, plaintiff was ready and willing "to select from the body of the orange trees so grown by"

defendant; but that none of said trees were over one foot high and "defendant requested plaintiff to wait another year to make such selection," defendant to continue the care of the same, "to all of which plaintiff agreed"; that, in June, 1911, plaintiff selected two thousand six hundred from among said four thousand trees and agreed to take the same provided defendant would cultivate and care for the same until the month of March, 1912, and it was then agreed orally that the trees should remain in the ground, defendant to continue to care for them until March, 1912, and that plaintiff and defendant should enter into a written contract modifying the terms of the original agreement extending the time one year, and thereafter defendant refused to sign said agreement and refused to cultivate or care for said trees or to deliver them or any of them and threatened to sell to other parties; that plaintiff has at all times been ready and willing to pay the reasonable value of defendant's services in and about the planting and cultivating said trees and has fully performed all the conditions of said agreement by him agreed to be performed; that defendant has failed to care for said trees, by reason whereof and by reason of damage from frost many have died; that the price agreed to be paid was just and adequate and that in the event plaintiff should "be unable to obtain said trees, he will be damaged in the sum of $4,000, by reason of the fact that he will be hereafter unable to purchase trees of the same character as those agreed to be furnished to him by defendant, at less than $1.00 each in the open market"; that defendant is insolvent and unable to respond in damages to a greater sum than five hundred dollars. Wherefore plaintiff prays the decree of the court directing defendant to deliver said trees to plaintiff as provided in said contract; that defendant be enjoined from disposing of any portion of said trees otherwise than as provided in said contract; "that defendant be compelled to pay such damages as may result from his failure to properly care for and cultivate said trees" and for such other relief as may be proper in the premises.

Defendant denied the material averments of the complaint except as to the making of the contract of 1908; denied that the price was adequate or just or reasonable; denied his insolvency and alleged that he was responsible for any judgment plaintiff might recover. Alleged, as a further defense,

that plaintiff refused to pay him for work done after June, 1910; that plaintiff failed to furnish sacks for balling said trees and that, in June, 1911, and again on December 13, 1911, defendant duly offered all of the trees, as required by the terms of his contract, and plaintiff then and there refused to accept them or to pay defendant the reasonable value of his services. By way of cross-complaint defendant alleged that plaintiff refused, in June, 1911, and again on December 13, 1911, to accept the orange trees mentioned and by reason thereof defendant was damaged in the sum of five hundred dollars.

The court found the facts much the same as alleged in the amended complaint. With regard to the oral agreement of 1910 and the agreement of June, 1911, to enter into a written agreement, the court found that defendant refused to sign said latter agreement or to receive any money and refused to deliver any of the trees at any time to plaintiff "and has ever since refused to perform the terms of either of said agreements to be by him performed."

In its decree the court adjudged as follows: "1st. That plaintiff is entitled to have and receive from defendant the 2600 orange trees selected by plaintiff in June, 1911, from the body of the orange trees being grown by defendant in or near the town of Centerville, county of Fresno, state of California, as specified in the written contract set forth in the complaint.

"2nd. That plaintiff furnish sacks sufficient to ball said trees.

"3rd. That defendant thereupon ball the same in careful and workmanlike manner and place the same in proper condition to be delivered to plaintiff and deliver the same to him.

"4th. That thereupon plaintiff pay to defendant the sum of 25 cents for each tree delivered and the further sum of $40 for expenses incurred in the care of said trees from June, 1911, and the sum of $10 being the rental value of the land upon which the same were being grown, from June, 1911.

"5th. In the event that the defendant shall be unable to deliver 2600 trees by reason of any injury which has been suffered since June, 1911, the defendant shall deliver other trees of a quality and size equal to those selected by plaintiff in June, 1911, instead thereof; or, shall pay to plaintiff for such

shortage at the rate for which similar trees can be bought at
or near the same place.

"6th. In the event that the parties hereto cannot agree as
to the number of trees injured or the amount of injury done,
if any, or the size or quality of trees offered in lieu of injured
trees, or the price of such trees as defendant shall fail to de-
liver, an application may be made to this court for the ap-
pointment of a referee to hear and determine such matters
and this case is left open for such purpose.

"7th. The defendant is enjoined from disposing of, or deal-
ing with said trees in any manner other than herein pro-
vided."

Appellant makes the following points: 1. That the case is
not one where specific performance can be adjudged; 2. The
evidence does not support the findings and the findings do not
support the judgment; 3. The court had no jurisdiction to set
aside the verdict, because it was stipulated by the parties that
a general verdict should be had in the case; 4. There was no
adequate consideration for the contract; 5. There was a fail-
ure to find on material issues.   We do not think it necessary
to consider all these points.

It seems to us that, in view of the undisputed facts and on
the face of the pleadings, findings, and decree, it is apparent
that plaintiff may be fully compensated in damages and that
his remedy is at law only.   There is a presumption that the
breach of an agreement to transfer personal property can be
relieved by pecuniary compensation.  (Civ. Code, sec. 3387.)
And where the breach of a contract to transfer personal prop-
erty can be thus compensated, an injunction cannot be granted
to prevent the breach.   (Code Civ. Proc., sec. 526, subds. 4, 5.)
Performance of an obligation to render personal service can-
not be specifically enforced.  (Civ. Code, sec. 3390.)   Com-
menting upon sections 3387 and 3389 of the Civil Code, Mr.
Justice Henshaw said, in *Glock* v. *Howard & Wilcox Colony
Co.*, 123 Cal. 1, 6, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac.
713]: "It is to be remembered that equity, designed but to
supplement the deficiencies of the law, will withhold its aid
where the law affords full redress.   For both these classes of
cases, then—that is to say, for those where the law is suffi-
cient, and for those where equity is powerless to aid—the
injured party must seek legal redress."

"In general a court of equitable jurisdiction will not decree the specific performance of contracts relating to chattels because there is not any specific quality in the individual articles which gives them special value to the contracting party and their money value recovered as damages will enable him to purchase others in the market of the like kind and quality." (Pomeroy on Contracts, Specific Performance, sec. 11.)

If the personal property has a market value, is bought and sold in the open market, and has no special or unique value, the remedy at law is sufficient since with the unpaid purchase money and the moneys recovered by action the vendee can buy in the open market property of the same character as that contracted for, if the vendor is in fault; likewise, where the vendee is in fault, the vendor may sell in the open market and the purchase price obtained, together with his damages, will furnish full compensation. In such cases specific performance is denied. (3 Page on Contracts, sec. 1629.) Mr. Page gives, as a common illustration of the denial of specific performance, cases where, though the remaining facts are sufficient to justify such equitable relief, the contracts involve continuous duties of a personal nature (Id., sec. 1633); a principle embodied in section 3390 of our Civil Code.

We do not think the present case furnishes an exception to these general principles, and, governed by them, we do not see how we can sustain the judgment.

The undisputed facts here are that orange trees (in nursery) were bought and sold in the open market, where this contract was made, and had a market value. Defendant himself had several thousand trees, besides the group of fo thousand mentioned, in an adjoining nursery from wh a plaintiff could have selected such trees as his contract cal d for but declined to do so. The contract does not refer to ty particular group of trees. Other persons in the neighbor d were growing orange trees for market and testified to their market value. It is beyond dispute that plaintiff could have gone into the open market at Centerville and purchased all the trees he required. The complaint so alleges and states the market price. His allegation of defendant's insolvency was not supported by any evidence nor was this issue found upon by the court. Defendant alleged his ability to meet any pecuniary demand of plaintiff and nothing appeared to

call it in question. It was shown that, in June, 1911, defendant refused to enter into the contract to hold and care for the trees until the following March, and in effect then and there repudiated his original contract, except to allow plaintiff to take the two thousand six hundred which he said he was willing to select. Plaintiff insisted that defendant should hold and care for these trees until the following March and that a written agreement should be signed to that effect. Defendant refused to sign the agreement and hence it was not obligatory upon him. (*Fuller* v. *Reed,* 38 Cal. 99; *Spinney* v. *Dowling,* 108 Cal. 666, [41 Pac. 797].) Plaintiff's cause of action accrued then and there. But there arose no right of action to enjoin defendant from disposing of trees; nor to compel him to perform personal service by holding and caring for them and to "ball" them when delivered. Plaintiff's right was simply to go into the open market and buy the trees required by him and bring his action against defendant for damages. If there had been no Washington (navel) orange trees available and plaintiff could not therefore supply his needs of this particular kind of tree and it had appeared that defendant could supply them, there might have been some ground for holding defendant to the specific performance of his agreement. But no such state of facts was alleged nor proven. We cannot see that this case is any different from that where a farmer agrees to sell, but afterward refuses to deliver, a certain number of tons of alfalfa hay or other product of his farm of which there is an abundance to be purchased in the open market. In such a case we do not think it would for a moment be contended that the vendee could go into an equity court and restrain this farmer from selling his hay to some other person; compel him to irrigate or otherwise care for it and bale and deliver it to the vendee at some future time. Nor do we think that in such an action as the present one could the vendee "have a referee appointed to hear and determine" questions of disagreement as to the injury done to the trees, the number of trees injured, their size and quality, and the price should defendant fail to deliver them, as the decree provides, for all which purposes the case was left open.

Respondent cites 36 Cyc. 555, as follows: "A court of equity therefore will not unless there is some special reason specifically enforce a contract for the sale of ordinary articles of

commerce''; and claims that, by the agreement of June, 1911, plaintiff acquired a special proprietary interest in the trees, and the agreement ''established a sort of trust relationship between plaintiff and defendant.'' We have seen that the so-called agreement of June, 1911, was to have been reduced to writing which was not done, defendant refusing to execute it. But had defendant agreed to these new terms we cannot see that it would have changed the relationship of the parties from that of ordinary vendor and vendee or have given plaintiff any proprietary interest in the trees or made defendant his trustee in respect to them.

Attention has been called to the failure to find upon the issue of insolvency. In the cases cited by respondent insolvency was a material factor. Insolvency of itself is not a ground of equitable interference but, as said by Mr. Justice Thompson, in *Heilman* v. *Union Canal Co.,* 37 Pa. 100, referred to in *Lively* v. *Johnston,* 45 Or. 30, [76 Pac. 946], cited by respondent: ''In balancing cases, it is a consideration that gives preponderance to the remedy.'' In the present case it was alleged and, we think, was a controlling factor and should have been proven and found by the court.

While the defendant depended upon his defenses raised by his specific denials, he also had the right to rely upon his offer to perform his part of the contract and plaintiff's refusal to accept performance.

There was evidence that the parties met at the nursery by agreement, in December, 1911, for the purpose of settling their differences. There was evidence that defendant offered to let plaintiff select the trees from the four thousand patch and if he could not find enough there of the quality called for in the contract he could take from the other groups of six or seven thousand as to which there was evidence that a majority of them were good, strong, healthy trees not injured at all by frost.

When the case went to the jury the court instructed them as follows: ''But if you find from the evidence that the defendant did in July, 1911, or in December, 1911, offer in good faith to the plaintiff to perform all the terms of the contract to be performed and that plaintiff refused to accept performance, in that case, you will find for the defendant.'' If the issue was a proper one to go to the jury, and we think it was,

it was also an issue on which the court should have made a finding. The real points at issue were whether there were enough trees of the kind and quality called for by the contract and whether defendant was willing and offered to furnish them.

It need hardly be added that a failure to find on a material issue demands a reversal of the case, and a judgment based upon findings which do not determine all the material issues is a decision against law. (*Knight* v. *Roche,* 56 Cal. 15; *Brown* v. *Burbank,* 59 Cal. 535; *Keiser* v. *Dalto,* 140 Cal. 167, [73 Pac. 828].)

The judgment is reversed.

Hart, J., and Burnett, J., concurred.