[Civ. No. 8248. First Appellate District, Division Two.—March 5, 1932.]

LeMOYNE RANCH (a Corporation), Respondent, v. JAMES T. AGAJANIAN et al., Appellants.

A. M. Astor and Porter C. Blackburn for Appellants.

E. S. Williams and G. C. O'Connell for Respondent.

STURTEVANT, J.—The plaintiff is a corporation engaged in operating a ranch near the city of Los Angeles

and is primarily engaged in feeding hogs. Heretofore the defendants were awarded a contract to remove garbage from that portion of the city of Los Angeles designated as the Eagle Rock District and the Lankershim District. After obtaining that contract the defendants and the plaintiff entered into a written contract by the terms of which the defendants sold and the plaintiff bought the garbage gathered in said districts by the defendants during a period of two years beginning on the first day of January, 1928. The consideration for the purchase was $150 per month. The defendants made deliveries until the first day of May, 1929, and then they ceased to make deliveries. On May 21, 1929, this action was commenced. The defendants answered and a trial was had before the trial court sitting without a jury. The trial court made findings in favor of the plaintiff and from the judgment entered thereon the defendants have appealed. By the terms of the judgment the defendants were ordered to ". . . specifically carry out and perform their agreement . . ." and they were ". . . perpetually enjoined and restrained . . ." from selling the garbage collected by them in said districts to any other person.

The defendants make several different points. ■ Each specific point is to the effect that the plaintiff's complaint is devoid of equity and that no decree should have been entered against them. In taking this position we think that they are clearly sustained by the law and the facts. The plaintiff did not allege and the trial court did not find that the defendants are insolvent. However, the plaintiff alleged and the trial court found: "That garbage is the only feed that can be given to hogs, and no other feed can be given them without making the cost of feeding them so high as to make it impossible to market them except at a loss, and for this reason all available supplies of garbage are readily and easily disposed of and contracted for by the persons collecting the same. That it is not possible for plaintiff to obtain garbage from any other source and such garbage is necessary and essential to the proper feeding of its said hogs. That by the defendants' refusal to fulfill their said contract and deliver said garbage to plaintiff, plaintiff's hogs have been and will continue to be without sufficient food, and have greatly deteriorated and will continue to rapidly deteriorate in condition and such deterioration is

increasing daily, and plaintiff will lose very large numbers of them and its entire herd will be practically destroyed and become valueless. That relying upon the fulfillment of said contract by defendants plaintiff expended large sums of money in preparing to receive, unload and care for said garbage, and added considerably to the number of hogs on its said ranch. That all of the matters and things herein set out were known to the defendants, and each of them, at the time they made and entered into the said contract, and at the time they stopped delivering garbage to plaintiff thereunder.'' There is neither allegation nor finding that the plaintiff had any other use for the garbage than to feed it to hogs. It is not alleged that other food for hogs could not be purchased. The only allegation and the only proof was that a substitute for the garbage would cost more money. In other words, it was the claim of the plaintiff that if it was compelled to purchase a substitute for the garbage that its damages would be high. As the contract between the plaintiff and defendants was a simple contract to buy and sell, a breach by the defendants would authorize the plaintiff to sue for damages and such damages are fixed by the statute. (Civ. Code, secs. 3354 and 3355.) Therefore the plaintiff had a plain, speedy and adequate remedy at law. Furthermore, section 526 of the Code of Civil Procedure, among other things, provides: ''When injunction may or may not be granted. . . . An injunction cannot be granted: . . . 5. To prevent the breach of a contract . . . the performance of which would not be specifically enforced; . . .'' The general rule is that specific performance of contracts in relation to personal property will not be enforced for the reason that ordinarily compensation for breach of contract may be had by way of an action at law for damages. In *Duff* v. *Fisher,* 15 Cal. 375, the contract involved was one for the sale of real and personal property. On page 381 the court said: ''The contract related to realty as well as personalty, and were it otherwise, the fact would not oust the jurisdiction. The equity upon which the court enforces a specific performance of a contract, does not arise from the character of the property involved, but from the inadequate remedy afforded by a recovery of damages in an action at law. (Adams' Equity, 77.)'' In the case of McLaughlin v. Piatti, 27 Cal. 451, the contract involved a

sale of five hundred head of cattle which had not been segregated from the larger herd with which they ranged the hills. The purchaser sought a decree in specific performance and an injunction. On page 463 the court said: "As a general rule, a bill in equity does not lie to enforce the specific performance of a sale of personal property. There are exceptions to the rule, but the case made by the plaintiff is not within them. The equitable jurisdiction to enforce specific performance in this class of contracts is not based either in whole or in part upon the accident of insolvency, but upon the general principle or truth that in the excepted cases there can be no adequate compensation in damages at law, the solvency of the defendant being given. This consequence sometimes results from the fact that the thing bargained for is of unusual distinction or curiosity, or from the fact that the commodities sold or contracted for are so related to the situation or to the business arrangements of the purchaser that nonfulfillment would greatly embarrass and impede him in his plans and prospects—threatening or involving a loss of profits which a jury could not correctly estimate; or to cases where the contract is not to be presently executed, and the like." Then continuing, the court pointed out that the purchaser's remedy was claim and delivery if he wanted the specific animals and otherwise it was an action for damages. In the case of *Senter* v. *Davis,* 38 Cal. 450, the contract involved the sale of a newspaper route. The court adverted to the rule quoted immediately above and then continuing, on page 454, the court said: "The general rule being that specific performance will not be decreed in this class of contracts, it devolves upon the plaintiff to state, not his contract merely, but its relation to his business plans, showing how they will be affected by a non-performance, or how and why the value of the performance cannot be correctly estimated by a jury and taken in lieu of it, or the like; or, in other words, he who relies upon an exception must state the facts which bring his case within it." In the case of *Emirzian* v. *Asato,* 23 Cal. App. 251 [137 Pac. 1072], the contract before the court was one in which the plaintiff had bought from the defendant a lot of orange trees to be delivered at a later date. The purchaser sought specific performance and was awarded a decree. On appeal the court made an extensive examination

of the authorities as to the jurisdiction of a court of equity and reached the conclusion that the plaintiff's bill was without equity. In the case of *Richfield Oil Co. of California* v. *Hercules Gasoline Co.*, 112 Cal. App. 431 [297 Pac. 73], the plaintiff was awarded an injunction restraining the defendant from delivering certain quantities of gasoline to persons other than the plaintiff. On appeal Mr. Presiding Justice Nourse, writing the opinion for this court, at page 953, said: ''In the same case it was held that an injunction would not lie to prevent a breach of such a contract and this rule has been generally followed. (See *Duvall* v. *White*, 46 Cal. App. 305, 308 [189 Pac. 324]; *Emirzian* v. *Asato*, 23 Cal. App. 251, 255 [137 Pac. 1072].) The reason for the rule is well expressed by Mr. Justice Chipman in the latter case (p. 256): 'If the personal property has a market value, is bought and sold in the open market, and has no special or unique value, the remedy at law is sufficient since with the unpaid purchase money and the moneys recovered by action the vendee can buy in the open market property of the same character as that contracted for, if the vendor is in fault.' '' Both the rule and the reasoning of the foregoing cases obtain in other jurisdictions. (*Southern Iron & Equipment Co.* v. *Vaughan*, 201 Ala. 356 [L. R. A. 1918E, 594, and notes, 78 South. 212]; 36 Cyc. 555.) Furthermore, it has been held that the rule is specially applicable to contracts involving the purchase of garbage. (*Engemoen* v. *Rea*, (C. C. A.) 26 Fed. (2d) 576.)

Some witnesses testified that one branch of the plaintiff's business was boarding hogs at so much per head. Therefore it may be presumed they knew and could testify as to the value per ton of garbage as a hog food. Some witnesses testified that substitutes for garbage cost too much. Therefore the costs of such articles were known by those witnesses. The sole remaining step was to ask those same witnesses how many pounds of barley, corn, wheat, or other good hog feed does it take to feed the same number of hogs and what is the reasonable cost thereof. The difference between the two costs is clearly the measure of the damages.

The trial court made a finding: ''That it is impossible to compute or ascertain in dollars the amount of damage and injury to said plaintiff's business.'' When following the code sections cited above it is impossible to comprehend what

the trial court had in mind in making that finding. It certainly rested on no evidence whatsoever. The trial court also made a finding that "Plaintiff will lose profits which will be ascertainable only with extreme difficulty." The same remark applies to that finding. As the defendants point out, one finding says it is impossible to ascertain the damage and the other finding says that the damage can be ascertained only with extreme difficulty and that the findings are conflicting. They certainly are conflicting and furthermore neither one is sustained by the evidence.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.

A' petition for a rehearing of this cause was denied by the District Court of Appeal on April 4, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 2, 1932.