[Civ. No. 1891. Third Appellate District.—April 30, 1919.]

MRS. J. E. SMITH, Administratrix, etc., Respondent, v. C. W. BARRICK, Administrator, etc., et al., Appellants.

[1] ESTATES OF DECEASED PERSONS—VESTING OF TITLE IN HEIRS OR DEVISEES—RIGHT TO CONVEY WITHOUT ADMINISTRATION—TITLE OF GRANTEE.—Title to the real estate of a deceased intestate vests immediately in his heirs, and of a testate in his devisees. That title they may convey without administration, whether they be domestic or foreign heirs or devisees—the title thus conveyed, however, is not a perfect title, in that it will always be subject to the right of possession in a local administrator for the payment of claims of legal creditors.

[2] ID.—LOSS OF TITLE BY ADVERSE POSSESSION—PROPERTY SUBJECT TO ADMINISTRATION.—An heir can likewise lose his interest in real property by the adverse possession of another; but the person who takes it by such adverse possession takes it subject to administration in the same manner that a grantee would.

[3] ID.—ADVERSE POSSESSION OF COTENANT—LOSS OF TITLE.—A tenant in common who has acquired his title by descent may be divested of it through adverse possession by his cotenant during the pendency of proceedings in administration.

[4] ID.—BASIS OF TITLE—SUFFICIENCY OF ELEMENTS.—While possession of land by a cotenant is not alone a sufficient basis upon which to

---

3. Adverse possession by tenant in common, note, 109 **Am. St. Rep.** 609.

establish title as against his co-owner, the making and taking and recording of deeds and mortgages by the cotenant affecting the whole of the property and the unquestioned retaining of all the rents and profits for a period of more than twenty years after the attaining of majority by the youngest of the co-owners and the placing of valuable improvements upon the property, all under a claim of exclusive ownership, constitute such basis.

[5] ID.—ACQUISITION OF TITLE AGAINST HEIRS—RIGHTS AND DUTIES OF ADMINISTRATOR.—The title acquired against the heir or his successor by adverse possession cannot be deemed to divest the administrator of the deceased of his power and duty to proceed with and conclude the administration of the estate.

APPEAL from a judgment of the Superior Court of Nevada County. George L. Jones, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Preston & Preston and Hennessey & Peterson for Appellants.

W. H. Slade and Prewett & Chamberlain for Respondent.

BUCK, P. J., *pro tem.*—This is an action to quiet title brought by the successor in interest of an heir against the other heirs and the administrator. Plaintiff claims to have acquired ownership by adverse possession and the suit was commenced under the provisions of section 749 of the Code of Civil Procedure. But by the dismissal of the action against all of the defendants except the original heirs and the administrator, the suit has become in fact an action to quiet title. (*Faxon* v. *All Persons*, 166 Cal. 707, 712, [L. R. A. 1916B, 1209, 137 Pac. 919].) Judgment was given in favor of plaintiff upon the ground that plaintiff and his predecessors had acquired title by adverse possession against the defendant heirs, and also against the administrator. From this judgment all of the defendants appeal. The facts upon which the trial court based its findings and decree are substantially as follows: On September 4, 1876, the ancestor from whom all parties deraigned title, Henry Reece, died intestate in the county of Nevada, leaving as his sole heirs his widow, Amanda Reece, and three children, the defendants

herein, aged respectively twelve, six, and three years, the youngest of whom did not become of age until 1891. With the exception of some personal property of the value of $447, the deceased left no other property except the quarter-section of land in controversy of the value, at that time, of $250. The property was the community property of himself and wife. On October 9, 1876, letters of administration were issued to his widow, Amanda Reece. But she took no other proceedings in the estate than to publish the notice to creditors and cause an inventory and appraisement to be made of the property. She died in 1887, and in 1915 letters of administration on the estate were issued to C. W. Barrick, who is made a defendant in his capacity as such administrator. On January 18, 1878, Amanda Reece made a deed of quitclaim to one A. S. Waldo, by which she did "remise, release, and forever quitclaim unto the party of the second part and to his heirs and assigns" the property in controversy. This deed was recorded in the records of Nevada County, July 3, 1880. Waldo was a son-in-law of Amanda Reece and had actual knowledge of the family interest in the land. At about the time she made the deed to Waldo, Amanda Reece and her three children moved from the land in Nevada County to Auburn, in Placer County, where they lived for a period of five years and then moved to Ukiah, in Mendocino County, a distance of about four hundred miles from Nevada County. It does not appear that any of the defendants ever returned to or visited the premises or ever received any income from the property, nor did their mother ever talk to them "about this property," and they never heard about it until the year 1913, when they were asked to give a quitclaim deed of their interest in it. After he obtained the quitclaim deed to the property in 1878, A. S. Waldo "put some stock on it and put a man there to take care of the stock." He did not live on the property himself. The property was under fence and was cultivated and no one ever objected to his possession at the time. He leased the property to a third person and collected the rent for the whole of it and paid taxes on it. On April 11, 1881, Waldo, by a grant, bargain, and sale deed which was recorded on April 23, 1881, conveyed the property to John Davis, who took possession of the land, cultivated it, and pastured it, re-

paired and built fences and built a dwelling-house thereon and occupied it until June, 1900, when by his deed, which was also duly recorded, John Davis conveyed the property to his son, Samuel Davis, who made his home on the property a part of the time and also leased it to third parties and received all the rents and profits therefrom. On July 9, 1908, Samuel Davis, by his deed of grant, bargain, and sale, which was also recorded, conveyed the property to Henry C. Worrall, who remained in possession of the property seven or eight years, and during all that time paid the taxes on the property and farmed and pastured it. Also, on July 9, 1908, Henry C. Worrall gave a mortgage of all of the property to Samuel Davis as security for the payment of the sum of one thousand two hundred dollars, and on August 9, 1912, Worrall mortgaged all of the property to one Edith B. Poulson as security for the payment of the sum of six hundred dollars; that both of these mortgages were recorded soon after being executed. Ever since 1890 the property has been assessed in the names of the foregoing record title holders thereof and all of the taxes have been paid.

[1] From the foregoing it appears that at the time of the death of their father in 1876 the defendants herein became vested with title to the property in question as cotenants in ownership with their mother, the mother owning an undivided one-half interest therein and each of the three heirs an undivided one-sixth interest therein. As stated in the case of *Phelps* v. *Grady,* 168 Cal. 73, at page 75, [141 Pac. 927] : ''Title to the real estate of the deceased intestate vests immediately in his heirs, of a testate in his devisees. That title they may convey without administration, and this they may do whether they be domestic or foreign heirs or devisees —true, the title thus conveyed is not a perfect title, in that the title will always be subject to the right of possession in a local administrator for the payment of claims of legal creditors. But with this defect, the heirs who have voluntarily parted with their title are not concerned and cannot find any fault—no case cited by the appellant denies the power of the heirs or devisees so to convey their title. Indeed, such a denial would be in the face of our express statutory law. All that such cases as *In re Pina,* 112 Cal. 14, [44 Pac. 332] , *Turner* v. *McDonald,* 76 Cal. 177, [9 Am. St. Rep. 189, [18 Pac. 262], *Estate of Strong,* 119 Cal. 633, [51 Pac. 1078],

*Blair* v. *Hazzard,* 158 Cal. 721, [112 Pac. 298], declare upon this matter is that the title thus conveyed is still subject to administration, and is therefore and in this sense only not perfect." **[2]** Now, if an heir can convey his interest by deed, it follows that he can likewise lose it by the adverse possession of another under the statute. But the person who takes it by such adverse possession under the statute takes it subject to administration in the same manner that a grantee would. In fact, title by adverse possession at common law was based upon the fictitious assumption of a pre-existing lost grant. (*Bryan* v. *Tormey,* 3 Cal. Unrep. 85, 88, [21 Pac. 725].)

**[3]** Therefore, there is no rule of law which prevents a tenant in common who has acquired his title by descent from being divested of his title through adverse possession by his cotenant during the pendency of proceedings in administration. Our supreme court, in the case of *Cooley* v. *Miller & Lux,* 156 Cal. 510, at page 515, [105 Pac. 981, 983], declares the rule as follows: "In *Bath* v. *Valdez,* 70 Cal. 360, [11 Pac. 727], the court held that a decree of distribution, made in the usual way, does not in any manner affect the title of one who has held by adverse possession against the heirs a sufficient time to gain title by prescription. The court says: 'It is the estate of the deceased upon which the probate court administers. It is the title which the deceased had in and to the real property at the time of his death, or which has inured to the estate after death and before distribution, which passes to the heirs and devisees.' "

**[4]** As regards the title by adverse possession, it is true that possession of the land by a cotenant is not alone a sufficient basis upon which to establish title as against his co-owner. But, in this case, there are other elements such as the making and taking and recording of deeds and mortgages by the cotenant affecting the whole of the property and the unquestioned retaining of all the rents and profits for a period of more than twenty years after the attaining of the majority of the youngest of the defendants and the placing of valuable improvements upon the property, all under a claim of exclusive ownership.

This case, therefore, comes within the rule laid down by our supreme court in the case of *Unger* v. *Mooney,* 63 Cal. 586, [49 Am. Rep. 100]; *Bath* v. *Valdez,* 70 Cal. 350, [11

Pac. 727] ; *Felix* v. *Felix,* 105 Cal. 1, [38 Pac. 521] ; *Packard*
v. *Moss,* 68 Cal. 123, [8 Pac. 818], and cases cited in 2 Corpus
Juris, 185, par. 355; *Alvarado* v. *Nordholdt,* 95 Cal. 119, [30
Pac. 211].

But under the rule laid down in *Blair* v. *Hazzard, supra,*
as explained in *Phelps* v. *Grady, supra,* the title acquired
against the heir or his successor by adverse possession cannot
be deemed to divest the administrator of the deceased of his
power and duty to proceed with and conclude the administra-
tion of the estate. To the extent, therefore, that the judg-
ment seeks to declare that the defendant administrator has
no interest in the property herein which is still a part of the
estate, it is erroneous.

The judgment may, therefore, be modified so as to provide
that the right, title, and interest of the plaintiff herein is
subject only to the right of the defendant administrator to
proceed with and conclude the administration of said estate,
and, as so modified herein, the judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the
district court of appeal on May 30, 1919, and a petition to
have the cause heard in the supreme court, after judgment
in the district court of appeal, was denied by the supreme
court on June 26, 1919.

Angellotti, C. J., Shaw, J., Wilbur, J., and Olney, J., being
all the Justices present, concurred.