## MAWSON v. GRAY et al.

No. 5037. Decided December 26, 1931. (6 P. [2d] 157.)

*Cyrus G. Gatrell,* of Salt Lake City, for appellant.

*J. M. Carlson,* of Salt Lake City, for respondent.

STRAUP, J.

This action was commenced in July, 1927, by the plaintiff, William Oliver Mawson, to quiet title to five acres of farm land situate in Salt Lake county. He alleged that by virtue of a deed of conveyance executed and delivered to him by his father, Oliver Mawson, and recorded in 1912, and by adverse possession since that time, and by adverse possession of his grantor for eleven years prior thereto and payment of taxes during all that period, he was in the exclusive possession and entitled to the possession and was the owner of the lands in question; and that the defendants claimed an interest therein adverse to his right, title, and interest, but that such claims were groundless and unfounded. The action was brought against L. H. Gray, administrator of the estate of Robert Mawson deecased, and Joseph E. Mawson, Robert Mawson, David Mawson, Mary H. Mawson Moore, and Rachael J. Caddy, defendants. The

defendants answered and alleged that the plaintiff and five named individual defendants were brothers and sisters, children of Oliver Mawson, deceased, and nephews and nieces of Robert Mawson, deceased; that Robert Mawson, at the time of his death in 1902, was the owner and in possession of the property in question; that Robert Mawson left surviving him as his sole heirs Oliver Mawson, a brother (the father of the plaintiff and of the five individual named defendants), and issue of three or four deceased brothers; that Oliver Mawson died in 1914 and left surviving him as his sole heirs the plaintiff and the five individual defendants, his children; that Oliver Mawson in 1912, about two years before his death, by quitclaim deed conveyed the land in question to the plaintiff "in trust for the benefit of all of the heirs of the said Robert Mawson; and that the said Oliver Mawson declared to the plaintiff in the presence of Mary H. Mawson Moore, one of the defendants, that he made and delivered the deed as aforesaid to the plaintiff for the reason that he was best able of all of the children of Oliver Mawson to close the estate of Robert Mawson and to get distribution thereof to the heirs of the said Robert Mawson"; that the plaintiff failed to take out letters of administration of the estate of Robert Mawson, deceased, and that thereupon and on behalf of the individual defendants, the defendant L. H. Gray, in 1925 (23 or 24 years after the death of Robert Mawson), was appointed administrator of the estate of Robert Mawson, deceased. All of the defendants denied that the plaintiff was the owner, or entitled to the possession of the lands in question.

A reply was filed by the plaintiff putting in issue all of the matters alleged in the answers, except the family relations, and denying that the deed from Oliver Mawson to the plaintiff was in trust as alleged in the answers, and averred that the deed was absolute.

The case was tried to the court who on the evidence found that Robert Mawson died in 1901 and at the time of his death "the title to the land in question was vested in him"; that he left surviving him a brother, Oliver Mawson, and

issue of other brothers in England, and that the defendant L. H. Gray in June, 1925, was appointed administrator of his estate; that from 1901 up to and including March 6, 1912, Oliver Mawson was in the exclusive possession of the property in question, continuously claimed to be the owner thereof, and as owner paid the taxes on the property each year; that on March 6, 1912, Oliver Mawson, while in the exclusive possession of the property, for a valuable consideration, sold and by deed conveyed the property to the plaintiff, William Oliver Mawson, which deed was recorded on March 12, 1912, and that the plaintiff ever since and until the commencement of this action exclusively possessed and occupied the premises and held the exclusive, open, and adverse possession thereof under claim of right and title and paid all of the taxes thereon from 1912 to the commencement of this action; that Oliver Mawson died in 1914, leaving as his sole surviving heirs the plaintiff and the five individual named defendants, his children; that Oliver Mawson by his deed of 1912 conveyed all his right, title, and interest in and to the premises to the plaintiff, and that "the said conveyance was absolute and was not a conveyance in trust for the benefit of the heirs of said Robert Mawson," and as alleged in the answers; and that Oliver Mawson had not declared that the deed, as alleged in the answer, was made to the plaintiff because he was best able to close or to distribute the estate of Robert Mawson, deceased, or that the deed was made otherwise than as an absolute deed of conveyance to the plaintiff.

Judgment was rendered accordingly quiting the title in the plaintiff and adjudging that the claims of the defendants were without right and that they had not nor had any of them any estate, right, title, or interest whatsoever in the lands in question or any part thereof.

The administrator alone appeals. The other defendants, who had appeared in the case and filed separate answers and represented by counsel other than counsel for the administrator, do not appeal, nor were they or any of them served with notice of the appeal. A motion for a new trial alone

was made by the administrator, which was overruled, and a bill of exceptions prepared alone by the administrator was served *only* on the plaintiff. Apparently, the heirs themselves, the real parties in interest, do not complain of the judgment nor seek to disturb it.

While the administrator assigns error that the findings are not sufficiently supported by evidence, yet he has not discussed such assignment in his brief nor does he in any particular point out wherein he claimed the findings are not supported by or are against the evidence, except as to the payment of one year of taxes. The findings that Oliver Mawson, the father and grantor of the plaintiff from 1901 to 1912, a period of eleven years, under claim of right and of ownership exclusively occupied and possessed the property and during that time each year paid all the taxes on the property and in March, 1912, by deed conveyed the property to the plaintiff who from then on and until the commencement of this action and under claim of right occupied and exclusively possessed the property as the owner thereof, and each year paid all the taxes except for the year 1914, are not questioned, except by general assignments, but not discussed.

The evidence shows that the taxes for 1914 were not paid when due or delinquent, that the property was sold for nonpayment of taxes for that year and at the sale was purchased by the county as it then could do, and that thereafter upon payment of such taxes and costs by the plaintiff, and upon an assignment to him of the certificate of sale, the county auditor, as in such case made and provided, issued and delivered to the plaintiff an auditor's tax deed. Such tax deed was received in evidence, not as a basis or indicia of title in virtue of such deed itself, but as evidence of payment of the taxes by the plaintiff for that year. Because the taxes were not regularly paid for that year, the claim is now made that such failure interrupted the running of the statute of limitations, and that a purchase of land at a tax sale is not a payment of the tax

within the meaning of the statute, nor is a redemption from a tax sale such a payment. In support of that are cited *Hart* v. *Randolph,* 142 Ill. 521, 32 N. E. 517; *Cain* v. *Ehrler,* 33 S. D. 536, 146 N. W. 694; *Webber* v. *Wannamaker,* 39 Colo. 425, 89 P. 780; and *Wyse* v. *Johnston,* 83 Ark. 520, 104 S. W. 204. Whether the rule as announced by such cases is the weight of authority, or to what extent such decisions were influenced by statutes, or whether our statute requires a similar construction, we need not and do not now decide, for the reason that since the finding that Oliver Mawson for more than eleven years before he conveyed to the plaintiff, under claim of right, exclusively possessed the property and each year as owner paid all of the taxes on the property and acquired title by adverse possession, is not questioned, the plaintiff acquired title by purchase and deed from Oliver Mawson and as found by the court and as shown by the evidence for a valuable consideration. Indeed, such proposition is not seriously disputed. What was claimed and what was especially averred in such respect by the defendants was that the property was conveyed to the plaintiff in trust for the use and benefit of all of the heirs of Robert Mawson, deceased. Thus, the plaintiff acquired good title by deed from one who, as the court found, had acquired ownership of the property, and therefore the plaintiff was not required to rely upon further adverse possession by him to give him complete ownership or title. Further, though Oliver Mawson had not acquired title by adverse possession and that the plaintiff by purchase and deed from him had not thereby acquired good title, and though the plaintiff had not paid the taxes for the year 1914 in manner to constitute payment of taxes for that year, yet, he indisputably thereafter paid all of the taxes on the property from 1915 to the appointment of the administrator in 1925, a period of ten years, and until the commencement of this action in 1927, a period of twelve years; and since the statutory period to acquire title by adverse possession and payment of taxes is seven years, the plaintiff for a period more than seven years after 1914 each year paid all the

taxes, and if, as found by the court and not questioned, the plaintiff had done everything else to acquire title by adverse possession, he is not to be denied ownership because the taxes for 1914 were not paid during that year, but were later paid by him.

It is further urged that though the plaintiff may have acquired title by adverse possession as against the heirs, he nevertheless could not acquire title by such means against the administrator; that an heir or devisee could not by adverse possession acquire title to property of an estate and thereby deprive the administrator of possession of it and from the rents and profits thereof or from administering and subjecting the property to payment of costs and expenses of administration and in payment of claims against the estate. To support that, the administrator cites *Blair* v. *Hazzard,* 158 Cal. 721, 112 P. 298, and *Acton* v. *Lamberson,* 102 Or. 472, 202 P. 421, 732. It is to be observed that in the first case the possession was by one who in the course of administration and before distribution had purchased the interests of devisees to whom the property had been devised in trust with power of sale; in the other, it was held that possession of heirs in the course of administration was not adverse to a purchaser at an administrator's sale for the payment of debts, for the reason that such heirs took the property subject to the payment of the ancestor's debts. In 2 C. J. 164, the proposition is thus stated:

"Heirs having entered as such cannot acquire title to the land descended, as against the debts of the ancestor, by a claim of adverse possession as against the title descended, although it may be, where an heir claims in his own right and his possession is considered adverse, that such possession, if continued for the statutory period, will divest the lien of a judgment obtained against the ancestor in his lifetime. Devisees having entered as such cannot acquire title to the lands descended or devised as against the debts of the devisor by a claim of adverse possession as against the title devised. Having accepted the will and entered into possession under it, they cannot now, in order to evade paying the debts of the testator, disconnect themselves entirely from him, and while enjoying his patrimony, disclaim that they received and held it under his will."

But the author further says:

"There is, however, nothing in the relation between heirs which will prevent the possession of one from becoming adverse to the others. But in order to render his possession adverse there must be plain, decisive, unequivocal acts or conduct on his part amounting to an ouster or disseizin of the others," etc.

On page 166 the author further states:

"An heir may hold possession of the decedent's land adversely to the executor or administrator; but where he goes into possession, claiming under the decedent as his heir or devisee, his possession is not deemed adverse to the right of the executor or administrator to sell the land for payment of the indebtedness of the estate."

All that may readily be conceded; but here Oliver Mawson did not possess the property in question as an heir or as a devisee, and more especially did the plaintiff not do so. Originally, the ten-acre plat, of which the five acres in controversy constituted the east half, was owned by Oliver Mawson, the father of the plaintiff and of the individ- ■ ual defendants. Oliver Mawson also owned additional lands amounting to about thirty acres adjoining or adjacent to the ten-acre plat. He lived and had his dwelling on the west half of the plat and there reared his family of children. Robert Mawson, his brother, never was married, and hence no children survived him. His only relatives in this country were his brother Oliver and the latter's children. For many years before Robert's death, Robert lived with Oliver as a member of his household. They cultivated and farmed the ten-acre plat together and used the products thereof for the household. They cultivated and farmed the ten-acre plat together and used the products thereof for the house- hold. In 1882 Oliver conveyed to Robert the east half of the ten-acre plat, the five acres in controversy. But after that and until the death of Robert he and Oliver continued to occupy and farm the land in common in about the same manner as they had done before the conveyance was made, and used the products thereof for the household. When Robert died he left no estate whatever except

his interest in the five acres in question. On his death, Oliver, under claim of ownership, continued in possession of the property until he conveyed it to the plaintiff, and until then exclusively possessed it as his own. Before Oliver conveyed the property to the plaintiff in 1912, he theretofore had conveyed divers parcels of lands to each of his children, the plaintiff, and to all of the individual defendants, keeping for himself about an acre and a half on which was his dwelling. Thus, Oliver occupied and possessed the property, not as an heir of Robert, but under claim that he was the owner of it, notwithstanding the prior deed from Oliver to Robert. The plaintiff, when he took possession of it, did so, not as an heir of either Robert or Oliver, but by purchase and by deed for which he paid a valuable consideration. As is seen, the administrator of the estate of Robert Mawson, deceased, was not appointed until 1925, about twenty-four years after the death of Robert Mawson. The brothers and sisters of the plaintiff lived on lands adjoining or adjacent to the land in question and had actual knowledge of the deed when made by their father to the plaintiff, knew that the plaintiff under the deed was claiming and claimed the land conveyed to him as his own and made no objection whatever to such claims, and treated and recognized the plaintiff as the owner of the lands conveyed to him, and not until after the appointment of the administrator was there any claim made by them to the contrary, nor as far as disclosed by the record did they make any claim that the plaintiff held his deed in trust for any purpose whatever until after this action was commenced.

Under these conditions possession of Oliver Mawson was not as an heir of Robert Mawson, nor was the possession of the plaintiff as an heir of either Robert or of Oliver Mawson. In such respect their status was the same as that of a stranger.

Further, the administrator was appointed more than two years before this action was commenced. Not anything is made to appear that there were any debts of or claims

against Robert Mawson at the time of his death, or that any have been presented or filed. Nor is it made to appear that there were any claims or demands due him. There being no such claims, debts, or demands, it is difficult to perceive what interest the administrator has in this controversy except to earn an administrator's and an attorney's fee. It is of no concern to him to whom the property in question is distributed or awarded. He is indifferent as between the real parties in interest and can litigate no question which arises only between such parties. This decree as effectively determines and adjudicates such rights as would any decree of distribution. We thus think the cited cases of the administrator not applicable.

This brings us to the last proposition discussed, the character of the conveyance, whether absolute or in trust, as alleged. The court found that the conveyance, and as is shown on the face of the deed, was absolute and was not in trust. No claim is made that there is any evidence to show that the deed was made in trust, as alleged. What is claimed in such respect is that the court erroneously excluded testimony offered by the defendants which is claimed had it been received would have shown that the conveyance was made in trust, as alleged. At the trial, the administrator and the other defendants called as witnesses two of the individual defendants, sisters of the plaintiff. To the first one called, counsel for the administrator propounded this question:

"Q. I will ask you whether or not you ever heard your father (Oliver Mawson) make any statement regarding the ownership of this five-acre tract of land subsequent to the death of Uncle Robert and prior to March 6, 1912, the date on which he gave a quit-claim deed to your brother William Oliver?"

To that an objection was made by counsel for the plaintiff that the witness, under subdivision 3, § 7123, Comp. Laws Utah 1917 (relating to persons who cannot be witnesses), was not a competent witness, and that the testimony sought was incompetent as varying the terms of a written

instrument and was immaterial. The court thereupon asked counsel propounding the question to state what he expected to prove by the witness. Counsel stated that he "expected to prove that Oliver Mawson stated in the presence of the witness and of the plaintiff that he was going to deed his interest in Robert's property to William (the plaintiff) for certain purposes which were not material to the administrator, but for the reason that he considered William would be most competent and capable of settling the matter, being acquainted with some of the English heirs, having met them while on his mission to England." The same objection was made to the offer as heretofore stated. The objection was sustained.

Thereupon the administrator offered to prove by the witness that "Oliver Mawson, in her presence, stated to the plaintiff that he wished the plaintiff to write to Sunderland Mawson, the only surviving brother, regarding Robert's property." The same objection was made to that and was sustained.

On calling the other witness, counsel for the administrator, without asking the witness any question, stated:

"I will make a formal offer. I offer to prove by this witness that the deceased Oliver Mawson in her presence stated to the plaintiff that a brother and nieces and nephews in England had an interest in Robert's property, and that such statement was made to the plaintiff in the presence of this witness, prior to the date of the deed from Oliver Mawson to the plaintiff."

The same objection was made to that and was sustained. Before ruling on the objections, the witnesses, in response to inquiries from the court, answered that they claimed an interest in the property as an heir of Oliver Mawson and of Robert Mawson.

Complaint is made of these rulings. The statute under which it is claimed the witnesses were incompetent is set forth at length in the cases of *Mower* v. *Mower,* 64 Utah 260, 228 P. 911 and *Miller* v. *Livingstone,* 31 Utah 415, 88

P. 338. The witnesses here were parties to the action. They also were directly interested in the event thereof. That interest was not in harmony with, but was hostile and adverse to and in conflict with the interest of the plaintiff against whom they were called. To support the claim of the admissibility of the proffered testimony, the administrator cites and relies on the cases of *Mower* v. *Mower*, supra; *Jones* v. *Jones*, 213 Ill. 228, 72 N. E. 695, 698; and *Owings* v. *Jones*, 151 Ind. 30, 51 N. E. 82. The first cited case is not applicable, for there the witnesses were not parties to the action, nor were they directly interested in the event thereof. The further question there considered involved the proposition as to when and under what circumstances declarations of a grantor, since deceased, may be received in evidence to show whether a deed was or was not delivered by him in his lifetime. We are not concerned with that.

The cited Illinois case involved this proposition. There the deceased had been married several times. When a widower, he conveyed certain real estate to one of his daughters, Mary Scott. He married the last time shortly after making the conveyance. At his death he left surviving him a widow and her minor children, and Mary Scott and other adult children. The widow brought an action on behalf of herself and her minor children against Mary Scott and other children to set aside the conveyance made to Mary. Mary defended the action. The other defendants, her brothers and sisters, defaulted. It was claimed that the conveyance was made through fraud and undue influence. To support her contention that the conveyance was made voluntarily and for value, Mary called as witnesses her brothers and sisters who had been made defendants, but who had defaulted. The court, over the objection of the plaintiff, permitted the witnesses to testify. Judgment went in favor of Mary Scott. On appeal it was contended by the plaintiff and appellant that the witnesses were not competent. The Supreme Court, in holding against the contention, said:

"The objection that the brothers and sisters of Mary Scott were not competent witnesses as against these appellants is not well taken. Their interests were identical with those of the appellants. If the deeds to Mary Scott were set aside, they would share in the division of the estate the same as the appellants; and, so far as the questions here under consideration are concerned, their interests were hostile to the interests of Mary Scott. The fact that they were made defendants by appellants does not prevent their testifying for Mary Scott, their codefendant, if their interests were in fact adverse to her interest."

It is thus seen that the interests of the witnesses called were "adverse" to the interests of Mary Scott who called them. That is not the situation here. The interests of the witnesses called were not adverse, but were in harmony and identical with the interests of those who called them. The interests of the witnesses so called by their answers and claims were hostile and adverse and in direct conflict with the interest of the plaintiff. They were called on their own behalf as well as on behalf of the administrator and of their codefendants whose interests were identical with the interests of the witnesses called and adverse to the plaintiff.

The Indiana case involves the same proposition involved in the Illinois case. We think the cited cases have been misconceived and are not applicable. We further are of the opinion that the witnesses here called were incompetent, and that the proffered testimony was properly excluded.

Further, we also are of the opinion that what, as stated by counsel, was offered to be proved had no tendency to show what was claimed for the testimony, that the deed from Oliver Mawson to the plaintiff was in trust for the use and benefit of the heirs of Robert Mawson as alleged in the answers. So had the defendants been permitted to prove what was stated was expected to be proved, the testimony would not have impeached the deed nor imposed upon the grant a trust such as was alleged. Whether under the stated circumstances by such kind and character of proffered testimony a trust may be created and imposed on a grant absolute on its face is not presented nor here argued and therefore is not considered nor decided.

The judgment of the court below is affirmed, with costs to the respondent.

CHERRY, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.