[L. A. No. 16335.   In Bank.—January 24, 1939.]

JAMES T. JOHNS, Respondent, v. LENA A. SCOBIE, as Administratrix, etc., Appellant.

Harvey, Johnston & Baker and T. H. Werdel for Appellant.

Samuel Taylor for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Fourth Appellate District, in order to give further consideration to the problem of adverse possession by one cotenant against others. On the other issues we are satisfied with the conclusions reached by said court, and accordingly adopt the following portion of the opinion of Mr. Justice *pro tempore* Haines, as part of the opinion of this court:

"This action was commenced by respondent James T. Johns, as plaintiff, against appellant Lena A. Scobie, as administratrix of the estate of Issac Johns, deceased, to obtain the reformation of a deed dated March 8, 1920, alleged to have been executed and delivered by the decedent in his lifetime to respondent and to be defective in describing less land than that intended to be conveyed. Appellant filed an answer denying everything alleged in the complaint, which answer she subsequently amended by pleading additional defenses which need not for our present purposes be recited in detail. She also filed a cross-complaint seeking, in behalf of the decedent's estate, to quiet title, both to the property described in the complaint, as actually mentioned in the deed, and also to the additional property claimed by respondent as constituting the rest of that intended to be included in the conveyance. Respondent answered this cross-complaint claiming, as against the decedent's estate, and appellant as administratrix thereof, title by adverse possession to the whole of the property mentioned, asserting that such adverse possession had been maintained for more than five years before the commencement of the action, and that it was under a

claim of title on respondent's part, exclusive of other right and hostile to any claim or title on the part of the decedent's estate, asserting that respondent had, during such five years paid all taxes levied and assessed on the land and further invoking the bar of sections 318, 319 and 322 of the Code of Civil Procedure. The trial court found in respondent's favor on the issues tendered by the cross-complaint and his answer thereto and on that basis rendered judgment quieting his title to the entire property without passing on any question of reformation of the deed. The present appeal is from this judgment.

"The evidence disclosed that respondent was a nephew of the deceased and that both were bachelors; that for many years prior to the decedent's death the two lived together in a two-room adobe cabin on part of the land here in dispute, had their beds in the same room, and both kept their papers in the same trunk which was at some times locked and at other times unlocked. Uncle and nephew were jointly engaged in the cattle business on the property. The land embraced 157.55 acres, for which the uncle held a government patent, also kept in the trunk referred to. On March 8, 1920, the deceased caused to be prepared by one Allen, signed and acknowledged, a grant deed in respondent's favor for about 45 acres of land, the rest of the 157.55 acres having, according to respondent's claim, been omitted by reason of a mistake in the description. This deed, according to respondent, was brought into the house of decedent, who said to respondent, 'Here is the deed,' whereupon respondent looked at it and put it in the trunk. Something like a year later respondent had Allen prepare another deed in decedent's favor, said to have described all of respondent's property so far as patented. This deed, respondent testified that he gave to decedent to read, after which decedent placed it also in the trunk 'with the rest of the papers'. According to respondent, however, it did not include the property embraced in the deed from his uncle to him but only affected property other and different from said 157.55 acres, which other property was owned by the respondent and over which he and his uncle were accustomed to run their stock.

"Respondent testified that he did not intend to pass title by this last-mentioned deed to his uncle, the decedent, but as to its purpose that:

" 'If anything happened to me so I would have it, if I happened to die or get killed I had no certainty of life. I was trying to protect him.'

"Thereupon the following colloquy ensued:

" 'Q. And the same thing applied with the deed made out by your uncle to you, made out to protect you in the event he died? A. That was the understanding, he was trying to protect me and the interest I had there. Q. If he died then you would have the deed? A. Yes. Q. If you died he was to have the other deed, that was it, wasn't it? A. I deeded mine to him in case anything happened to him before I passed away, I was protecting him as our partnership. Q. And if he passed away first he was to protect you? A. Certainly. Q. And in the event both lived both kept your own properties? A. Yes sir.'

"Isaac Johns, the uncle, died on December 26, 1924, whereupon respondent promptly recorded the deed from the decedent to himself and later burned the deed from himself to the decedent. Respondent has ever since occupied the whole 157.55 acres in controversy, all of which has been and is under fence, and has erected an 8-room dwelling upon it. No question about the ownership of the property appears to have been raised by anybody until 1936, in February of which year respondent says that he was told through an abstract company that his title was defective, and on April 8th of which year appellant Lena A. Scobie secured letters of administration on the decedent's estate, whereupon the present litigation ensued.

█ "In our opinion it sufficiently appears from the record that Isaac Johns died intestate and that his heirs at law are five nephews and nieces, to-wit, W. E. Johns, Elizabeth A. Wood, respondent James T. Johns, appellant Lena A. Scobie (administratrix) and Jonathan Johns. At the trial Mrs. Scobie was asked directly what heirs decedent left and answered giving this list. █ No objection was made to this testimony at the time it was given, though counsel for respondent now claims that it ought to be disregarded, both because the subject is not involved in the pleadings and for the further reason that the testimony is a conclusion of law since, although the evidence itself disclosed that the decedent died a bachelor, there is nothing in it specifically to negative the possibility of his having left parents, brothers or sisters

surviving him. The inquiry as to who are the decedent's heirs is not an inquiry as to an ultimate fact in the present case, but only as to probative facts involved in the effort to determine whether respondent's possession of the land involved has been adverse to the estate as claimed. The circumstance that merely probative facts are not pleaded is no obstacle to proving them if relevant to the issues that are pleaded. Counsel for respondent had full opportunity to cross-examine Mrs. Scobie and inquire whether or not decedent left any nearer relatives than the nieces and nephews named and omitted either to do so or to move to strike out as a conclusion her statement that they were decedent's heirs. Neither did he introduce any evidence to the contrary or make any statement at the trial of any claim to the contrary. In these circumstances we think Mrs. Scobie's undisputed statement on the subject must be taken to be true.''

■ The trial court did not expressly find on the issue of delivery of the deed, but it is clear from the testimony quoted above that the grantor did not intend to relinquish all control over the property prior to his death, and therefore there was no legal delivery. Hence plaintiff obtained no title by the deed itself, and his demand for reformation must fail. It remains to be determined whether he acquired title to the property in whole or in part by adverse possession, bearing in mind that the trial court found that such a title was acquired to the entire property.

■ All of the elements of adverse possession are clearly established save one, the element of hostile or adverse claim. The decedent died intestate, and upon his death title to the property became vested in his heirs (Prob. Code, sec. 300) whether such heirs were known or unknown. (*State* v. *Miller*, 149 Cal. 208 [85 Pac. 609].) In the present case the heirs, all nephews and nieces, were entitled to equal shares under the laws of succession, and therefore took title as tenants in common. ■ It is a fundamental rule that each tenant in common has a right to occupy the whole of the property. The possession of one is deemed the possession of all; each may assume that another in exclusive possession is possessing for all and not adversely to the others; and consequently one tenant in common does not, merely by exclusive possession, gain title by adverse possession against the others. Such possession will be presumed to be by permission and rightful,

unless notice is brought home to the others that it has become hostile. (*Wood* v. *Henley*, 88 Cal. App. 441 [263 Pac. 870]; *Nelson* v. *Sweitzer*, 22 Cal. App. (2d) 382 [71 Pac. (2d) 85].)

But it is equally well settled that where notice of the hostile claim, either actual or constructive, is brought home to the other cotenants, adverse possession may be gained. (See *Akley* v. *Bassett*, 189 Cal. 625 [209 Pac. 576]; *Unger* v. *Mooney*, 63 Cal. 586 [49 Am. Rep. 100]; *Winterburn* v. *Chambers*, 91 Cal. 170 [27 Pac. 658]; *Smith* v. *Barrick*, 41 Cal. App. 28 [182 Pac. 56]; *Beitz* v. *Buendiger*, 144 Minn. 52 [174 N. W. 440]; *May* v. *Chesapeake etc. Ry. Co.*, 184 Ky. 493 [212 S. W. 131]; Tiffany, Real Property, (2d ed.) p. 2017; Thompson, Real Property, pp. 995, 996, 1005; note, 4 So. Cal. L. Rev. 325.) The erection of the house by plaintiff might perhaps offer a basis for the claim here if the evidence were more satisfactory as to the time it was built or the other facts that might tend to establish notice reasonably to be derived from it. But in any event the recordation of the deed from decedent to plaintiff does, in our opinion, establish the necessary notice.

Although there are some decisions to the contrary, the weight of authority seems to support the doctrine that where a tenant in common enters into possession and claims under an invalid deed purporting to convey the property to him, the recordation of the deed is notice to his cotenants of its existence and therefore of the adverse character of his claim, so as to start the statute of limitations running, at least where, as here, he knew nothing of the existence of the other cotenants. (See Tiffany, Real Property, (2d ed.) p. 2018; Thompson, Real Property, p. 1008, sec. 1838, 1929 Supp., p. 630; *Elder* v. *McClaskey*, 70 Fed. 529; *Akley* v. *Bassett*, 189 Cal. 625, 642 [209 Pac. 576]; *McCann* v. *Welch*, 106 Wis. 142 [81 N. W. 996]; *Bourne* v. *Wiele*, 159 Wis. 340 [150 N. W. 420]; *Puckett* v. *McDaniel*, 8 Tex. Civ. App. 630 [28 S. W. 360], followed in *Morgan* v. *White*, 50 Tex. Civ. App. 318 [110 S. W. 491], and *Ames* v. *Howes*, 13 Idaho, 756 [93 Pac. 35]; *Keyser* v. *Brown*, 80 Ind. App. 504 [138 N. E. 514]; *Quarels* v. *Bradshaw*, 200 Ky. 475 [255 S. W. 124]; *Peeples* v. *Boykin*, 132 Miss. 359 [96 So. 177]; *Craven* v. *Craven*, 68 Neb. 459 [94 N. W. 604].)

In *Elder* v. *McClaskey, supra,* the court declares that the presumption of a tenant in common holding by permission of other cotenants only applies where the possession was avowedly begun as a tenant in common, and not where it commenced under a deed purporting to give the fee, which is the exact situation before us here. And in emphasizing the proposition that constructive notice is sufficient, and actual notice not essential, the court says (p. 545): "If a tenant in common, in order to make his possession adverse to a co-tenant, is obliged to seek the latter out and actually inform him of his intention, then it would become impossible to set the statute running against absent heirs, whose existence and whereabouts were unknown to the tenant, and whose heirship and interest in the property were unknown to themselves . . . Cases can be stated, doubtless, where the fiduciary relation between the possessor and the owner is actual, and not created alone by the legal character of their respective titles, in which the dependence of the one upon the loyalty of the other is so complete that nothing but actual notice of the change from a subordinate to an adverse possession would suffice to set the statute running. In such cases it would seem that the relation must be of such a nature as affirmatively to discourage the owner from giving attention to conduct of the tenant. But the authorities cited show conclusively that no such rule obtains where the fiduciary relation, if such it can be properly called, is created merely by the character of the respective titles, and not by an actual personal dependence of the owner upon the possessor, and that in such cases the owner is bound at his peril to take notice of acts of the possessor of such open and notorious character, and so unmistakably indicative of an intention to exclude others from any interest in the land, that the world about, including the real owner, must be presumed to know and act upon them."

The above decision and the statement that the ordinary presumption does not apply where the possession was not avowedly begun as a tenant in common, were approved and followed by this court in *Akley* v. *Bassett, supra.*

Similarly, in *Bourne* v. *Wiele, supra,* the court said (p. 421): "If it appeared that either the widow or the defendants (the adverse claimants) had ever recognized or acknowledged that the plaintiffs had title as cotenants to any

part of the premises, it would probably be necessary that actual knowledge of the changed and hostile character of the defendants' possession be brought home to the plaintiffs before such possession could be held adverse . . . No such acknowledgment appears, however. On the contrary, all the evidence on the subject indicates that neither the widow nor the present defendants ever knew of the existence of the plaintiffs, and hence never acknowledged that the plaintiffs had any interest in the premises.''

There are a few contrary decisions, based on facts substantially different from those presented by the record herein. They are cases, e. g., in which a person knowingly begins his possession as a tenant in common, and attempts to secure full ownership against the other tenants by taking a deed from a third party, or purchasing at a tax sale. In the latter situation it is properly held that his acts amount to nothing more than payment of the tax, and entitles him only to contribution from the others. (See *Cocks* v. *Simmons*, 55 Ark. 104 [17 S. W. 594, 29 Am. St. Rep. 28].)

██ The argument is also made that an undelivered deed cannot constitute color of title. A few cases contain expressions to this effect. (See *Casady* v. *Casady*, 184 Iowa, 1241 [169 N. W. 683]; *Stearns Coal & Lumber Co.* v. *Boyatt*, 168 Ky. 111 [181 S. W. 962]; 2 C. J. S. 595.) On its facts, the Casady case is not in conflict with our present decision, for there the making of the purported deed was never disclosed to the grantee, and the instrument remained in the grantor's personal possession until he died. The contention that adverse possession begun during the grantor's lifetime with the deed still in his possession and the grantee unaware of it, could be deemed under color of title, was properly rejected by the court. The Stearns case states the above-mentioned rule in a brief *dictum*, but the case was chiefly concerned with the extent of the land alleged to be adversely possessed. On the other hand, numerous authorities have stressed the point that color of title is merely a means of showing hostility of possession; that it is never a good title but merely an appearance of title. Almost every kind of void or voidable deed has been held to be color of title, including those where the defect appeared on the face of the instrument. ''Generally speaking, any instrument, however defective or imperfect, and no matter from what cause

invalid, purporting to convey the land, and showing the extent of the tenant's claim, may be color of title . . . '' (1 Am. Jur. 901; see authorities collected in 1 Am. Jur. 894, 902–905, 907; Thompson, Real Property, 1929 Supp., p. 844; *McCann* v. *Welch, supra.*)   The California decisions are to the same effect.   (*Wilson* v. *Atkinson,* 77 Cal. 485 [20 Pac. 66, 11 Am. St. Rep. 299]; *Packard* v. *Moss,* 68 Cal. 123 [8 Pac. 818].)

If a deed wholly void by reason of lack of title in the grantor or because of defects in its execution or the proceedings upon which it is based may constitute color of title (see cases cited, *supra*), we think a deed believed valid by grantor and grantee, but failing to measure up to the legal requirement of delivery, may likewise be sufficient for this purpose.   The fact that lack of delivery makes it void is utterly immaterial; the question is not whether the title is good, but whether it appears to be good, so as to be notice to others of the claim of the adverse possessor.   In the instant case the technical defect in delivery did not detract in the slightest degree from the notice conveyed by the recordation of a deed good on its face, and it must therefore be held that the requirement of notice of the hostile claim was fulfilled.

█ It is further objected that even if plaintiff could and did hold adversely to his coheirs, the other tenants in common, he did not establish adverse possession against the estate.   The cases relied on in this connection, however, are clearly distinguishable.   They involve situations where administration was commenced, and thereafter an heir or devisee made his entry and set up his hostile claim.   In such cases it is properly held that the heir or devisee cannot acquire title by adverse possession against the executor or administrator, any more than can a tenant against his landlord, while holding under the tenancy.   (See *Blair* v. *Hazzard,* 158 Cal. 721 [112 Pac. 298]; *Phelps* v. *Grady,* 168 Cal. 73 [141 Pac. 926]; *Smith* v. *Barrick,* 41 Cal. App. 28 [182 Pac. 56].)

The instant case presents an entirely different situation. Plaintiff went into possession and recorded his deed twelve years before the issuance of letters of administration.   He did not take the property during administration, or from the estate.   His title by adverse possession, if it could be acquired, was complete before administration began.   The

mere possibility of some future proceedings in administration could not completely bar the acquisition of an adverse title. It would seem clear that if adverse possession can be gained against the other heirs, who have the legal title, it certainly can be gained against such claims as the executor or administrator may have for purposes of administration. The case of *Mawson* v. *Gray*, 78 Utah, 542 [6 Pac. (2d) 157], is closely in point, and the opinion therein distinguishes our decision in *Blair* v. *Hazzard, supra*.

We conclude, therefore, that the elements of adverse possession have been established, and that plaintiff has acquired title against his coheirs and against the estate. The remaining question is as to the extent of the land thus acquired. If, as we hold, the hostile claim rests upon the deed, it only extended to the 45 acres described by it, and that is all that plaintiff may claim. If evidence is presented to establish notice from the structure erected or other acts of possession indicating a claim to the entire parcel, it might be possible to sustain the claim as to the whole. It would not, of course, be possible to establish constructive adverse possession to the whole from possession of a part, since the color of title relied on here (the deed) does not describe the whole property. (See *Johnson* v. *Buck,* 7 Cal. App. (2d) 197, 202 [46 Pac. (2d) 771] ; *In re Wasson,* 54 Cal. App. 269, 273 [201 Pac. 793].) On this issue the record is too unsatisfactory to sustain the judgment for plaintiff. As we have already pointed out, the deed itself is the only clear basis for the adverse possession, and that only serves to make out the claim for the 45 acres described. Unless other evidence is forthcoming to justify a greater claim, the court cannot give judgment for more than that.

The judgment is reversed and the cause remanded for new trial or other proceedings in conformity with the above opinion.